## ARTHUR L. NELSON *v.* CHARLES SEILER.
### [No. 42, October Term, 1927.]

64

*Decided December 8th, 1927.*

66

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Aubrey Pearre, Jr.,* and *George E. Kieffner,* for the appellant.

*J. Cookman Boyd,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

Charles Seiler, while walking in the bed of Roland Avenue in Baltimore City, was struck by an automobile driven by Arthur L. Nelson, and recovered a judgment against Nelson in this case for his damages; and the defendant brings up for review rulings during the course of the trial on offers of evidence, on a motion to withdraw a juror and continue the cause for misconduct of plaintiff's counsel to the prejudice of the defendant, and on instructions prayed by the defendant. The accident occurred at night on June 15th, 1926. Seiler, after having ridden on an outbound car far beyond his destination, walked along Roland Avenue back toward the center of the city, and according to his own testimony, was walking out from the sidewalk to the car tracks at the street crossing to wait for an inbound car when the automobile struck him. Nelson, who was driving the automobile—owned by his father —testified that he struck Seiler at a point in the bed of the street between crossings, and did not see Seiler until his automobile was too close to stop. The street at that point is lined by trees, and the car tracks are walled in by hedges, and there was a question of the extent to which the foliage obscured the road, and a question of the strength of the street lighting. The defendant's witnesses testified, too, that tar and gravel recently spread on the road bed added to the difficulty in seeing Seiler. There was testimony that the

plaintiff had been under the influence of liquor that day and night, and testimony to the contrary.

The appellant's father was joined as a defendant, but at the end of all the testimony and the rulings on prayers for instructions, a judgment of *non pros.* was taken as to that one defendant.

The exceptions group themselves about seven questions, and two of these of chief importance are here considered first. One is a question whether a defendant testifying in such a suit may for the purpose of impeaching his veracity as a witness be asked whether he has been arrested and convicted of violations of the motor vehicle law in the past. The defendant here, now appellant, was asked whether he had not been convicted before a magistrate, in Baltimore County, in 1924, of exceeding the legal speed limit, and he answered that he had been. Again he was asked whether before that he had not been convicted and fined for reckless driving in Montgomery County, and he answered that he had not. He was asked whether he had not been found guilty of driving without having his license in his possession in 1920 and again in 1923, and he answered that he had been twice convicted of that offense. Objections to all these questions were overruled.

It has been held by this court, and apparently by a majority of courts of other states, that to impeach the veracity of any witness he may be asked whether he has been convicted of crime. *Smith v. State,* 64 Md. 25; *McLaughlin v. Mencke,* 80 Md. 83; *Deck v. Balto. & O. R. Co.,* 100 Md. 168; *Mattingly v. Montgomery,* 106 Md. 461; *Balto. & O. R. Co. v. Strube,* 111 Md. 119; *United Railways v. Phillips,* 129 Md. 328; *Annarina v. Boland,* 136 Md. 365; *Lavine v. Abramson,* 142 Md. 222. And see generally a review of decisions in notes, 6 *A. L. R.* 1608, and 25 *A. L. R.* 339. It has also been held in this state that a conviction for violation of the criminal law in the very transaction made the basis of a present suit for damages may be introduced to substantiate the evidence of the plaintiff as to the defendant's actions. *Mattingly v. Montgomery,* and *Balto. & O. R. Co.*

*v. Strube, supra.* But we are not concerned with a conviction arising out of the same accident here; no question as to that was asked.

Confining ourselves to efforts to impeach the veracity of witnesses, it has been decided by this court further that mere charges or arrests, not followed by convictions, may not be shown. *Bonaparte v. Thayer,* 95 Md. 548, 559; *Duffy v. State,* 151 Md. 456, 468. And in *Simond v. State,* 127 Md. 29, 38, it was recognized that previous convictions might be too remote to affect a witness' present credibility. "It would certainly be carrying the rule to its limit," said the court, "to ask a witness if he had been arrested ten years before for being drunk and sent to jail." But beyond this the court has not marked out any limits to such an inquiry. The appellant contends that only convictions for crimes involving moral turpitude reflect upon a witness' worthiness of belief, and evidence of lesser crimes is irrelevant, and that view has been adopted by many courts. But it has not been adopted in Maryland, or apparently in the majority of other states. In *Smith v. State, supra,* the question admitted was whether the witness had ever been in jail, and the admission has been upheld in several of the other cases last cited, and in *McLaughlin v. Mencke, supra,* evidence was admitted of confinement to jail upon a conviction for drunkenness.

But assuming that the previous crimes which may be inquired about are not limited to those involving moral turpitude, the appellant urges that some distinction must still be observed between lesser violations of the criminal law, because some of them are so plainly without bearing on the witness' credibility and would commonly be brought into a case only for some ulterior and probably illegitimate purpose. And it seems to us this argument can hardly be denied. To admit as possible evidence of a witness' unworthiness of belief the fact that he has been convicted of driving over a stop signal, or making a left-hand turn where it is not permitted, would be unreasonable. Criminal law and criminal procedure are made use of for the enforcement of a large volume of mere regulations of convenience and order, wholly

without relation to any moral qualities; and while it may have been less apparent in times past, it is now at least unescapable that some discrimination must be made when the courts come to receive evidence of violations to impeach the credibility of a witness. It is not required that the evidence be restricted to infamous crimes or those involving moral turpitude on the one hand, but, on the other, the purpose of the admission, to impeach credibility, must impose some limits; the convictions should be of infringements of the law that may have some tendency to impeach credibility, and not all infringements do. No rigid classification seems possible. The principle generally adopted by courts which follow otherwise the practice followed in Maryland is that the trial court must exercise discretion when offers of convictions are made, looking to the purpose for which the evidence is offered, and that its decision will not be interfered with on appeal except when the evidence is so clearly irrelevant that its admission could not be said to be within the discretion lodged with the trial court. 2 *Wigmore, Evidence* (2d. Ed.), sec. 983. *Third Great Western Co. v. Loomis,* 32 N. Y. 127, 132. *People v. McArron,* 121 Mich. 1. And this we take to be the principle we are required to follow in Maryland.

Applying these principles to the questions admitted over objection here, we consider that none of them could bring out facts reflecting on a witness' credibility and their admission was erroneous. Convictions for driving without a license are so clearly without any such bearing that it is doubtful whether they could have a misleading effect on the minds of a jury, and perhaps their admission might be treated as harmless; but convictions for exceeding the speed limit seem more likely to have been harmful because of a possible suggestion of excessive speed in the case at bar, a fact of which there was no direct evidence and one to prove which the prior convictions would not be admissible. *Balto. & O. R. Co. v. Black,* 107 Md. 642, 655. Our opinion is that the evidence was so far from having any bearing on the veracity of the witness that, treating it as offered for

that purpose, its admission was error which requires a reversal of the judgment.

Counsel for the plaintiff contends, however, that these past convictions, and also arrests asked about, would be admissible for another purpose in this particular case. An offer was made to prove that the father of the present appellant, owner of the automobile and a co-defendant, knew of the convictions and arrests of his son alluded to, and it was argued that upon such proof liability might be placed upon the father for entrusting his automobile to an incompetent or dangerous driver. The existence of such a ground of liability, if the facts were proved, was left unconsidered in *Whitelock v. Dennis*, 139 Md. 557, 564, and *Myers v. Shipley*, 140 Md. 380, 384; and it is not necessary to consider it here. The declaration contained no allegation of any negligence in the father himself, but based liability in him solely upon the ground that the son was his agent or employee in driving the car; and the plaintiff offered no testimony in chief to establish liability in the father on any other ground. It was in cross-examination of the son, the present appellant, that an offer was made to establish liability in the father on the ground of negligence in entrusting his automobile to a driver known to be incompetent and dangerous, and then, on objection, the court offered the plaintiff leave to amend his declaration to cover that ground, but it was declined because the trial would have been stopped for the amendment and a continuance granted to the defendant. In this situation the evidence was rightly rejected, in so far as its purpose was to establish negligence in the father as stated. And this court concludes that it should have been rejected, even considered as offered to impeach the witness' veracity.

Discussion before the court and jury on one of the questions asked by the plaintiff about a supposed arrest of the defendant for violation of the traffic laws, without a conviction, brought a motion for the withdrawal of a juror and a continuance of the cause because of misconduct of the plaintiff's counsel, and the overruling of that motion forms the subject of another important exception. After the appellant

had been asked on cross-examination about violations of the
traffic law already discussed, and immediately after an objec-
tion had been sustained to a question of arrest, but not of
conviction, on November 17th, 1922, for failure to give a
right of way to a pedestrian, counsel for the appellee asked
whether on that date the defendant had not run into a
colored woman and broken her leg and then, prior to the time
for the case to come up in the traffic court, made a settlement
with the woman to prevent the case from coming up. An
objection to this was likewise sustained, and the court added
that it was an improper question. Then the record of the
trial continues: "(Mr. Boyd): I have got his report. (The
Court): I can not help it, sir. It is an improper question.
(Mr. Boyd): I do not think so. I am asking these questions
in view of what I stated before, to show the recklessness of
this man, and I am reading from the report made by this
man to the automobile commissioner, and I am showing, if
your Honor please, why the case was never tried. Now, that
might not go, according to your Honor's rulings, for the pur-
pose of reflecting on the credibility of the witness, but it does
go to the main question in this case, for which these ques-
tions are asked, the recklessness of this driver and the at-
tempt to bring it home to the father. (The Court): For the
purpose of getting the exception on the other question you
have in mind. (Mr. Boyd): Well, it is admissible for that
purpose."

The defendant then made his motion that a juror be with-
drawn and the case continued on the ground of misconduct
of counsel, and it was overruled. And the court cautioned
the jury to pay no attention to the question asked, and draw
no inference from them, when objections to them had been
sustained. And this was followed by counsel: "(Mr. Boyd):
The question was admissible for the purpose I asked it.
(The Court): Well, I have sustained the objection. (Mr.
Boyd): But I want it distinctly understood that I am not
conceding the question to be an improper one."

This evidence was not admissible, for an arrest on a charge
of it could not establish the fact of recklessness, nor would

the fact of settlement with an injured person be evidence to prove liability or fault. *Duffy v. State,* 151 Md. 456, 468; *Kalus v. Bass,* 122 Md. 467, 474.

Generally, the choice of measures to protect the fair, unprejudiced, working of its proceedings is left to the discretion of the trial court, and only in exceptional cases will its choice be reviewed in this court. In the greater number of instances the injection into a trial of matter other than that involved in the issue to be decided is cured by withdrawal of it and an instruction to the jury to disregard it, but there may, of course, be instances in which it would not be cured in this way, and terminating the trial and taking the case up afresh before another jury would be the only adequate means of correction. Those instances are exceptional, but they do arise. *Waldron v. Waldron,* 156 U. S. 361, 363; *State v. Moran,* 99 Conn. 115; Review of decisions in *L. R. A.,* 1918D, 4; *Balto. & O. R. Co. v. Boyd,* 67 Md. 32, 42; *Garlitz v. State,* 71 Md. 293, 305; *International Co. v. Clark,* 147 Md. 34, 42; *Duffy v. State,* 151 Md. 456; *Thompson on Trials,* secs. 960, 965. And this case in our opinion presents one of the exceptional instances. After the exclusion of evidence of an arrest on the specified date, counsel persisted, asking a more detailed question about an accident and arrest on that date, enlarging on it with reference to a settlement with an injured pedestrian to forestall a trial, then, after that was excluded and the question declared improper, went further still and announced that the facts he sought to bring into the case were stated in a report by the defendant and that counsel had been reading from that report; and, further still, after the court had instructed the jury to disregard excluded evidence, counsel announced that nevertheless this evidence was in his opinion admissible and proper. On appeal this court is concerned only with the effect on the appellant's rights; and he was in effect denied the protection of rulings of the court, evidence not to be considered in the decision of the issue being tried was persistently given to the jury by counsel and its damaging tendency enlarged upon; and the instruction of the court to

cure the impropriety was combatted with an emphatic expression of dissent. In our opinion this was prejudicial to the defendant to such a degree that it vitiated the trial beyond cure by a cautionary instruction. The only substantial question is as to the action which this court is required to take, if any. A motion to withdraw a juror because of some prejudicial occurrence and to continue a cause for a new trial cannot be treated as the equivalent of a motion for a new trial after verdict, from which no appeal would lie. It is primarily neither an ordinary motion for a new trial nor a motion for a continuance, but those remedies are rather consequences of the main relief, which is the exclusion of improper statements or evidence from the basis of the verdict. The motion is to terminate the trial for that purpose upon the supposition that an objection and a cautionary instruction to the jury have not cured or could not cure the resulting damage. This court has recognized that failure of the trial court to give such an instruction when requested and needed would necessitate a reversal of the judgment and the award of a new trial. *Dick v. State,* 107 Md. 11, 19; *Citizens Ins. Co. v. Conowingo Bridge Co.,* 116 Md. 422, 440; *Md. & Penna. R. Co. v. Knight,* 122 Md. 576, 583; *Susquehanna Transmission Co. v. Murphy,* 131 Md. 340, 349. And it would seem to follow by equal reasoning that, if prejudicial misconduct is such that it could not be adequately cured by an instruction, a refusal of the only measure of protection left to the moving party, a termination of the trial, should be reviewable on appeal. This is in accord with conclusions adopted elsewhere. *Waldron v. Waldron,* 156 U. S. 361, 383. For these reasons we consider the overruling of the motion to have been reversible error.

The appellant urges that a photograph of the site taken in the winter after the accident, when the trees and shrubbery were bare of leaves, and in daytime, was improperly admitted because it was too likely to mislead the jury in deciding an issue of care in driving there at night when the foliage was full. The court admitted the picture with warnings to the jury on the effect of these differences, for the pur-

pose of making the situation and distances clear, and then, after having had its attention called to the opinion of this court in the case of *Snibbe v. Robinson,* 151 Md. 658, 663, reversed its rulings and directed the jury not to be influenced by any impressions they might have obtained from inspection of the photograph, and to consider the conditions at the site as testified to. In our opinion the trial judge rightly decided to exclude the picture. It is questioned whether, after it had been made the basis of much of the testimony in the case, as it had been here, and had been exhibited to the jury so as to make them visualize the scene from it, its admission could be cured by an instruction to disregard it. While such an instruction is usually sufficient it is not always so. *Hopt v. Utah,* 120 U. S. 430, 438; *Waldron v. Waldron,* 156 U. S. 361, 383. As we find the judgment must be reversed on other grounds, however, it is unnecessary to decide this question.

Admission against objection of questions put to the appellant on cross-examination as to the whereabouts and business of his father, the other defendant, is to be reviewed on another group of exceptions. These questions, according to the strict rules of evidence, being irrelevant to the issue to be decided, were inadmissible, and in the same situation in a retrial should be omitted, but it might be questioned whether the admission of them was likely to produce prejudice serious enough to require a reversal. The questions and answers were: "Where is he? I don't know where he is now. He is probably taking a ride with his grandson. Is he in the city? Yes, sir; he is in the city. What is his business? He is in the insurance business. Is he in any other business than that? Yes, sir. What other business? He is a member of the firm of the Baltimore Gas Light Company." The father was not a witness, so that his credibility was not in issue; there was no claim against him for punitive damages; and it would have been improper to convey to the jury by such means the fact, if it was a fact, that the defendants, or either of them, were insured against loss from the liability sought to be imposed in the case. And the relationship of

the son to a man of means, if that had been the fact sought, would have been irrelevant and inadmissible. *Stockton v. Frey,* 4 Gill, 406, 420; *United Railways v. Riley,* 109 Md. 327, 341; *Stockham v. Malcolm,* 111 Md. 615, 620; *Beam Motor Car Co. v. Loewer,* 131 Md. 552, 556; *International Co. v. Clark,* 147 Md. 34, 42; 1 *Wigmore, Evidence* (2nd Ed.), sec. 282.

Six exceptions present a question of admissibility of evidence to show the strength of the lighting at the place of the accident, but it needs little discussion. It is objected that evidence offered on this by the plaintiff in rebuttal should have been offered in chief; this may be true, but the court exercises some discretion in regulating the order of proof, and the evidence might have been received late without error. An objection that the testimony is not properly confined to the exact time of the accident seems not well taken, for it was testimony of the effect of permanent lighting arrangements, and the court appears to have brought it down as nearly as is practicable to exactly the same conditions.

Four exceptions are to the exclusion of records of two arrests and convictions of the plaintiff for drunkenness and disturbance of the public peace. The plaintiff had testified, at first, that he had never used intoxicating liquors, either on the day of the accident at or any other time, but on further cross-examination had admitted one arrest and conviction three years before for being drunk, and as to another instance, two years and more before, answered that he did not know; and the records of conviction in these cases were the ones excluded later when offered by the defendant. The exclusion of the first could have done no harm, as the fact of conviction was admitted. The second record might properly have been admitted in view of the issue of drinking at the time of the accident, but we should hesitate to say that the exclusion of it could not be supported as a proper exercise of the court's discretion, in view of the date of the conviction and the small number of convictions for drunkenness cited.

On the exceptions to rulings on prayers for instructions the appellant presses for review only the refusal of five of his

own, and these rulings may be dealt with briefly. Two of the prayers, numbered 5½ and 6, asked that a verdict be directed for the defendants for lack of evidence to prove each of two allegations of the declaration respectively: an allegation that the accident was caused by physical inability of the appellant to drive, and another that it was caused by driving at a reckless rate of speed. These prayers were rightly rejected. Apart from any other objections to them, it is sufficient that there were allegations of negligence generally and recovery might be based on other theories of the facts even if these two theories were excluded, so that the court could not direct a verdict merely for lack of evidence on either or both of these. A prayer numbered 6½ asked that the jury be instructed on the requirement of the law that headlights shall not throw a dazzling or glaring light to a height of more than forty-two inches above the road at a distance of seventy-five feet ahead. This was requested to justify the appellant's lights and his failure to see the plaintiff in the road until he was close upon him. It does not seem important, but we see no sufficient reason for refusing the instruction if prayed, and think it should be granted in the same situation on a new trial. *Brown v. Patterson,* 141 Md. 293, 298.

Prayers numbered twelve and thirteen asked instructions that the plaintiff was *prima facie* guilty of contributory negligence if at the time he was struck he was "walking in the south driveway of Roland Avenue in about the middle thereof at night time," or "was at or near the center of said southbound driveway between street crossings." The inference is that this is the legal consequence of the provision of the law (Code, art. 56, sec. 209) that between street crossings vehicles shall have the right of way. It is not clear that the twelfth prayer supposes the plaintiff to be between street crossings, but taking both prayers to intend to place him there, his being so, while it is one of the facts to be considered on the question of his negligence, is not sufficient standing alone to establish negligence *prima facie,* to establish it, that is, in the absence of any other facts. No statute gives the fact that effect, and it would not logically follow, for a pedestrian has a right to

cross the streets between crossings, and it is conceivable that a man might be injured while crossing with care and without contesting the right of way there. There are statements in the authorities that negligence is *prima facie* shown by this one fact [*Huddy, Automobiles* (2nd Ed.), sec. 267] but it seems to us inaccurate. The question is one of ordinary care only, entirely for the jury, and we think it would be going too far for the court to give the fact *prima facie* effect. We find no error in the rulings on these prayers, therefore. See decisions collected in 14 *A. L. R.* 1176.

*Judgment reversed, and new trial awarded, with costs to the appellant.*