7 A.3d 145

**Deltavia CURE**

v.

**STATE of Maryland.**

**No. 2739, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Oct. 28, 2010.

558

Allison Pierce Brasseaux (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Susannah E. Prucka (Douglas Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., WOODWARD and FREDERICK J. SHARER (Retired, Specially Assigned), JJ.

FREDERICK J. SHARER, J. (Retired, Specially Assigned).

A jury sitting in the Circuit Court for Baltimore City convicted Deltavia Cure, appellant, of various violations of the controlled dangerous substances laws.[1]   In this appeal, Cure presents a single question for our review:

> Did the trial court abuse its discretion when it ruled that Mr. Cure could be impeached with a prior conviction for first-degree arson?

Because Cure introduced his prior arson conviction in his direct testimony, we shall hold that he waived appellate review of that issue.   Nonetheless, even assuming that the issue is preserved, we discern no abuse of discretion in the trial court's ruling admitting the prior first-degree arson conviction for impeachment purposes.

## BACKGROUND

Because the factual predicate for the charges against Cure, and his conviction, are not relevant to the issues before us, and because we assume the parties' familiarity with the facts, we need not recite the facts in detail.   *Washington v. State,* 180 Md.App. 458, 461 n. 2, 951 A.2d 885 (2008).   It is sufficient to note that Cure was arrested by Baltimore City police officers,

---

1. The jury convicted Cure of possession of heroin with the intent to distribute, possession of cocaine with the intent to distribute, conspiracy to distribute heroin, conspiracy to possess with the intent to distribute heroin, conspiracy to distribute cocaine, and conspiracy to possess with the intent to distribute cocaine.   The sentencing court imposed a 10–year term of incarceration for possession with intent to distribute heroin, a concurrent 10–year term for possession with intent to distribute cocaine, and a concurrent 10–year term for conspiracy to distribute heroin.   The remaining convictions merged for sentencing purposes.

who observed him in what they concluded to be several hand-to-hand drug transactions. Following Cure's arrest, officers went to a nearby back yard that they suspected was Cure's "stash area," based upon his several visits to that area while under observation. There, they found a plastic bag containing what proved to be controlled substances, namely heroin and cocaine.

### *The Trial—Waiver*

On the first day of trial, before jury selection began, defense counsel asked the trial court to rule whether the State would be permitted to impeach Cure with two prior convictions, should he subsequently decide to testify in his own defense.

The following colloquy between counsel and the court ensued:

[DEFENSE COUNSEL]: Mr. Cure has two prior convictions that could be used to impeach him if he decides to testify. I mean, we haven't made that decision yet, obviously, and so, I mean we would want a hearing as to whether or not the State would be allowed to use those convictions to impeach him.

THE COURT: Well, what are they?

[DEFENSE COUNSEL]: So, I didn't know—one is—they were both when he was a juvenile, but was charged and convicted as an adult. One is attempted murder and the other was arson.

[PROSECUTOR]: Your Honor, actually the State doesn't believe any attempt falls under—

THE COURT: Neither do I.

[PROSECUTOR]:—falls under, but there was a, let me back up first, again. **There was a conviction separately of first degree arson. The State would like to bring that up** and then in that, attempted first degree murder case, there was a conviction for the use of a handgun in the commission of a felony.

THE COURT: Well, that's not an impeachable [sic].

[PROSECUTOR]: That leaves us with the first degree arson, Your Honor.

THE COURT: Yeah and **the same argument that applies to possession with intent to distribute applies to arson. It's done secretly, covertly with knowledge that an individual is violating the law. Essentially, the same reasoning. I'd let that in.**

[DEFENSE COUNSEL]: **Yes, Your Honor, and certainly we would object and my argument would be obviously that the prejudicial effect of an arson would like [sic] so inflame the jury that he couldn't get a fair trial.**

THE COURT: That may be prejudicial, but in a legal sense, it's not. Of course, albiet, did that happen within the last 15 years?

[PROSECUTOR]: It did, Your Honor. I'll have the exact dates for you in a second.

THE COURT: Do you agree it happened within the last 15 years?

[DEFENSE COUNSEL]: Yes, Your Honor.

[PROSECUTOR]: March of 2001, Your Honor.

THE COURT: Mm—hmm and all evidence that's against the defendant is prejudicial. **The question is, is it prejudicial in a legal sense and I don't believe it is.**

[DEFENSE COUNSEL]: Yes, Your Honor.

(Emphasis added.)

On the second day of trial, after the State rested its case and the court denied the defense motion for judgment of acquittal, defense counsel advised Cure, on the record, of his right not to testify. The advice included the following:

[DEFENSE COUNSEL]: Now, do you understand that we've already had a hearing on this and [the judge] has ruled that if you testify, the State can ask you about your arson conviction, right, and you understand that the jury can take that into consideration not as to whether you're guilty of this charge or not. However, they can take that

into consideration as to whether your testimony is believable or not. Do you understand that?

[APPELLANT]: Yes.

[DEFENSE COUNSEL]: Now that you know all of that, do you still want to testify?

[APPELLANT]: Yes.

Cure then took the stand, and generally denied any participation in the drug activities earlier described by the State's witnesses.

In direct examination, defense counsel elicited the following testimony from Cure about his prior arson conviction:

[DEFENSE COUNSEL]: Now, this is not your first brush with the law. In fact, you have a prior conviction, is that correct?

[APPELLANT]: Yes, sir.

[DEFENSE COUNSEL]: And that conviction is for first degree arson, is that correct?

[APPELLANT]: Yes, sir.

[DEFENSE COUNSEL]: You're on probation for that right now, aren't you?

[APPELLANT]: Yes.

[DEFENSE COUNSEL]: And you served time for that, didn't you?

[APPELLANT]: Yes.

[DEFENSE COUNSEL]: When was that conviction?

[APPELLANT]: That was—I actually was convicted March the 7th, 2001.

[DEFENSE COUNSEL]: 2001. How old were you at the time that this alleged offense took place?

[APPELLANT]: I was 16 at the time.

[DEFENSE COUNSEL]: You were 16 years old.

[APPELLANT]: Yes, sir.

[DEFENSE COUNSEL]: Okay. So and in fact, you're on probation to the Violent Offenders Unit—

[APPELLANT]: Yeah, it's the Violence Prevention Unit.

[DEFENSE COUNSEL]: And what does that mean?

[APPELLANT]: Well, basically what it is is people who have been convicted from my understanding, what it is is that people have been convicted of a violent crime, they just implemented this as I believe my PO had told me—

[PROSECUTOR]: Objection.

THE COURT: Sustained.

[DEFENSE COUNSEL]: And how often do you have to report?

[APPELLANT]: Every single week.

[DEFENSE COUNSEL]: Every single week.

[APPELLANT]: And call in twice a week.

[PROSECUTOR]: Objection. Relevance.

[THE COURT]: Okay. Go ahead.

In his cross-examination, the prosecutor did not question Cure about his prior conviction or his probation status. Cure, however, offered the following, clearly non-responsive, answer to the prosecutor's very first question to him on cross-examination:

[PROSECUTOR]: Sir, how long had you known Mr. McNeil? [2]

[APPELLANT]: Well, as you brought up my incarceration, I was locked up for seven and a half years. So I just—

[PROSECUTOR]: Sir, how long had you known Mr. McNeil?

[APPELLANT]: He's my family . . .

The defense renewed its motion for judgment of acquittal at the close of its case. The court denied the motion.

The court's instructions to the jury included the following:

You had heard evidence that the Defendant had been convicted of a crime. You may consider that evidence in deciding whether the Defendant is telling the truth, but for

---

2. Richard McNeil was arrested at the same time as Cure, also for illegal drug activity.

absolutely no other purpose. You must not use that conviction as any evidence that the Defendant committed the crime charged in this case.

The prosecutor did not refer to the prior conviction in closing argument. The jury convicted Cure, as we have indicated. *See* footnote 1.

## DISCUSSION

Cure contends that the trial court abused its discretion when it ruled that the State could impeach him with his prior arson conviction. Although admitting that arson was a felony at common law, and thus within the "eligible universe" of convictions that may be used to impeach a witness, he asserts that the probative value of his arson conviction did not outweigh its prejudicial effect. In fact, Cure contends that the impeachment value of an arson conviction is "virtually non-existent," arguing that it has little bearing on veracity, while "its potential for prejudice is great."

Although Cure testified about his first-degree arson conviction on direct examination, he now contends that that "does not affect his right to challenge the trial court's ruling on appeal." Cure recognizes that, in defeating the State's waiver argument, he must overcome the decision of the Court of Appeals in *Brown v. State*, 373 Md. 234, 817 A.2d 241 (2003), where "Judge Raker announced the judgment of the Court and held that the defendant [who, like Cure, testified on direct examination about a prior conviction] had waived the issue for appellate review." He attempts to overcome that decision by suggesting that it is not controlling in this case. Instead, he asserts that Judge Wilner's dissenting opinion in *Brown* "with respect to the waiver issue ... announced the law of Maryland."

Not surprisingly, the State disagrees with Cure's view of the precedential value of Judge Wilner's dissent in *Brown*, but "acknowledges an ambiguity in the case law on [the waiver] issue." The State points to *Johnson v. State*, 9 Md.App. 166, 177, 263 A.2d 232 (1970), *overruled on others grounds by*

*Bailey v. State,* 263 Md. 424, 283 A.2d 360 (1971), wherein this Court "observe[d] that if the prior conviction was introduced by the defendant himself rather than by the State, he thereby waives objection." Although the State contends that Cure waived the issue for appellate review, it nonetheless asserts that the trial court did not abuse its discretion when it ruled that his prior conviction for first-degree arson could be admitted for impeachment purposes.

### *Waiver—Or Not?*

■ Cure raises an interesting question as to the precedential value of the Court's fragmented opinion in *Brown.* Does a defendant who, after the trial court rules that a prior conviction may be introduced for impeachment purposes, testifies about the conviction in his direct examination waive the issue for appellate review? The issue in *Brown* is the precise issue before us in the present case.

Calvin Brown was charged with assault. After the State concluded its case in chief, Brown argued that his prior conviction for possession of a controlled dangerous substance with intent to distribute should not be admitted for impeachment purposes because its probative value was outweighed by the danger of unfair prejudice. *Brown, supra,* 373 Md. at 236, 817 A.2d 241. The trial court ruled that the State could impeach Brown with that prior conviction. *Id.* After a co-defendant testified for the defense, Brown took the stand. *Id.* at 255–56, 817 A.2d 241. During direct examination he admitted his previous CDS conviction. *Id.* at 256, 817 A.2d 241. In response to the State's question on cross-examination, Brown confirmed the conviction. *Id.* The jury convicted Brown of second-degree assault. *Id.* at 235, 817 A.2d 241.

On appeal, Brown argued that the trial court erred in ruling that the prior conviction was admissible for impeachment purposes. In an unreported opinion, this Court affirmed the judgment, holding that Brown waived the issue for appellate review when he introduced the evidence of his prior conviction during his direct examination. *Calvin Brown v. State of Maryland,* No. 1639, September Term, 2000 (filed March 26,

2002). (Then Chief Judge Murphy concurred in the judgment on the grounds that the trial court did not abuse its discretion when ruling that the prior conviction was admissible, but he would have held that the issue was preserved for appeal). The Court of Appeals granted Brown's petition for writ of certiorari and affirmed. *Brown, supra,* 373 Md. at 236–37, 817 A.2d 241. That affirmance, however, is convoluted.

Judge Raker authored the Court's opinion, in which she noted that "[t]he question we must decide in this case is whether a defendant waives the right to challenge on appeal the propriety of the trial court ruling [on the admissibility of a prior conviction for impeachment purposes] when the defendant introduces the prior conviction in his direct testimony." *Id.* at 235, 817 A.2d 241. Judge Raker (joined by Judges Cathell and Battaglia) answered that question in the affirmative, relying in part on the U.S. Supreme Court's plurality decision in *Ohler v. United States,* 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), and this Court's decision in *Johnson, supra.*

In *Ohler,* the Supreme Court, in a five-four decision based on non-constitutional grounds, held that the petitioner waived any error in the trial court's preliminary ruling permitting impeachment by a prior conviction when she preemptively introduced the evidence in her direct testimony. *Ohler,* 529 U.S. at 760, 120 S.Ct. 1851. Although a number of state appellate courts have rejected *Ohler,* Judge Raker in *Brown* expressly declined to follow those courts, noting that "the ruling in *Ohler* and our holding today are consistent with our jurisprudence on appellate procedure, specifically, the traditional rules on waiver and the requirements of preservation of error." *Brown,* 373 Md. at 245–46, 817 A.2d 241.

Thirty years prior to the Supreme Court's opinion in *Ohler,* Judge Orth, writing for this Court, "observe[d] that if the prior conviction was introduced by the defendant himself rather than by the State, he thereby waives objection." *Johnson, supra,* 9 Md.App. at 177, 263 A.2d 232. We noted that if a defendant "so offers the conviction, probably as a matter of

trial strategy to soften the anticipated blow in the eyes of the trier of fact, he cannot be heard to complain [on appeal] that his own act of offering such evidence violated his constitutional rights." *Id.*

Having concluded that Brown waived the issue by introducing the evidence in his direct examination, Judge Raker did not address the merits of whether the trial court erred in admitting Brown's prior CDS conviction for impeachment purposes. *Brown,* 373 Md. at 246, 817 A.2d 241. In a dissenting opinion, Judge Wilner (joined by Chief Judge Bell and Judge Eldridge) wrote that he would reject *Ohler* and "hold that, *in the circumstances of this case,* [Brown] did not, by drawing the sting, waive his right to complain about the court's ruling that evidence of his prior conviction was admissible." *Id.* at 257, 817 A.2d 241 (emphasis in the original). Judge Wilner (and Judges Bell and Eldridge) also would have overruled *State v. Giddens,* 335 Md. 205, 642 A.2d 870 (1994), and *State v. Woodland,* 337 Md. 519, 654 A.2d 1314 (1995), and found Brown's prior CDS conviction inadmissible for impeachment purposes.[3] *Id.* at 267, 817 A.2d 241.

Judge Harrell authored a concurring opinion in which he agreed with the dissent on the waiver issue, but did not support overruling *Giddens* or *Woodland,* and would have held that the trial court did not abuse its discretion in admitting Brown's prior CDS conviction for impeachment purposes. *Id.* at 246–47, 817 A.2d 241. His position resulted in the fourth vote required for an affirmance of the judgment of conviction. *Id.* at 252, 817 A.2d 241. As noted by Judge Wilner, the breakdown of the vote created "a peculiar setting." *Id.* at 251, 817 A.2d 241.

---

**3.** In *State v. Giddens,* 335 Md. 205, 642 A.2d 870 (1994), the Court held that a prior conviction for distribution of cocaine was relevant to credibility and could be admitted for impeachment purposes under Md. Rule 5–609. In *State v. Woodland,* 337 Md. 519, 654 A.2d 1314 (1995), the Court held that a prior conviction for possession of a controlled dangerous substance with intent to distribute was an impeachable offense under Md. Rule 5–609.

■ Although four judges (three dissenting and one concurring), and thus a majority, *would have* held that Brown did not waive the issue by testifying about his prior conviction in his direct examination, we are not convinced that Judge Wilner's dissenting opinion in *Brown* "announced the law of Maryland" on the waiver issue as now urged by Cure. Despite the peculiarity of the vote in *Brown,* "[i]t is axiomatic that a dissent is not controlling precedent." *Padilla v. State,* 180 Md.App. 210, 232, 949 A.2d 68, *cert. denied,* 405 Md. 507, 954 A.2d 468 (2008).

Moreover, *Brown* has been cited favorably by both the Court of Appeals and this Court for the proposition announced by Judge Raker in the plurality opinion, albeit in a context other than a challenge to the admissibility of a prior conviction for impeachment purposes. *See Myer v. State,* 403 Md. 463, 483, 943 A.2d 615 (2008) (*"See, e.g., Brown v. State,* 373 Md. 234, 238–39 [817 A.2d 241] (2003) (stating that a party who introduces evidence cannot complain on appeal that the evidence was erroneously admitted.")); *Johnson v. State,* 156 Md.App. 694, 704, 848 A.2d 660 (2004) (*"See Brown v. State,* 373 Md. 234, 238 [817 A.2d 241] (2003) restating the long-held principle that 'a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.' "); *State Farm Fire & Casualty Co. v. Carter,* 154 Md.App. 400, 408, 840 A.2d 161 (2003) ("To be sure, when a party seeks a trial court's ruling on a motion *in limine,* the party must object to the admission of the evidence at the time it is actually offered at trial, in order to preserve the objection. *See Brown v. State,* 373 Md. 234, 242 [817 A.2d 241] (2003)").

Yet, given the unusual disposition of *Brown,* and the fact that a majority of the judges would have held that the defendant had not waived the issue for appeal, we consider whether the dissenting opinion has any application to the case now before us. Judge Wilner, writing for the dissent (and with the concurrence of Judge Harrell on this issue only), noted that the "underlying facts of the case . . . *are* important . . . even on the question of waiver." *Brown, supra,* 373 Md. at 252, 817 A.2d 241 (emphasis in the original). Judge Wilner

further stated that he "would adhere generally to the contemporaneous objection rule, because it is a useful rule," but "would bend it *in this situation,* however, because when rigidly applied, it fails to serve the ends of fairness or the search for truth." *Id.* at 266, 817 A.2d 241 (emphasis added).

█ When we compare the facts of the present case with those of *Brown,* we do not believe Judge Wilner's concern for fairness is implicated by adherence to the contemporaneous objection rule.[4] We explain.

Cure's trial counsel raised the question of the admissibility of the prior convictions on the first day of trial, prior to the *voir dire* of the jury. Upon hearing that Cure had previous convictions for attempted first-degree murder and the use of a handgun in the commission of a felony, the trial court immediately responded that those convictions are not impeachable offenses.

The discussion then focused on Cure's 2001 conviction for first-degree arson, and the prosecutor stated he "would like to bring that up." The trial judge, reasoning that arson, like possession with intent to distribute, is "done secretly, covertly with knowledge that an individual is violating the law," ruled that he would "let that in." Defense counsel replied that "certainly we would object," and for grounds stated that "the prejudicial effect of an arson would like [sic] so inflame the jury that he couldn't get a fair trial." The trial judge, recognizing that "all evidence against the defendant is prejudicial," nonetheless ruled that a prior arson conviction "is not prejudicial in a legal sense." Defense counsel then simply replied: "Yes, Your Honor."

---

**4.** Reference to the "contemporaneous objection rule" refers generally to (1) the requirement set forth in Md. Rule 4–323(a) that an objection to the admission of evidence in a criminal trial is waived unless it is made at the time the evidence is offered or as soon thereafter as the ground for the objection becomes apparent; and (2) the well-settled principle that a pre-trial motion *in limine* to preclude the admission of evidence does not suffice to constitute or preserve an objection to that evidence, but rather an objection must be made when the evidence is offered. *Brown v. State,* 373 Md. 234, 258, 817 A.2d 241 (2003).

Thereafter, the court conducted *voir dire* of the venire and seated a jury panel. Following opening statements, the court released the jury for the day.

The next day the State put on its case, calling five witnesses to the stand. After the State rested, the court heard and denied the defense's motion for judgment of acquittal. Defense counsel then advised Cure on the record of his right not to testify. In so doing, defense counsel reminded Cure that the trial court "already ... ruled that if you testify, the State can ask you about your arson conviction, right, and you understand that the jury can take that into consideration ... as to whether your testimony is believable or not."

The record before us, however, does not reflect that the defense renewed its objection to the court's ruling of the previous day that the State could impeach Cure with the prior arson conviction, or that *the trial court* affirmed its earlier ruling.[5] Rather, it appears to us that the defense had acquiesced in the court's ruling announced the day before. *Grandison v. State*, 305 Md. 685, 765, 506 A.2d 580 ("The right to appeal may be waived where there is acquiescence in the decision from which the appeal is taken or by otherwise taking a position inconsistent with the right to appeal."), *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986).

Moreover, when Cure took the stand, defense counsel did not merely elicit the fact that he had been convicted at age 16 of first-degree arson and served a sentence for the offense.

---

**5.** *See Watson v. State*, 311 Md. 370, 372 n. 1, 535 A.2d 455 (1988) (no waiver where the trial court affirmed its pre-trial ruling on the admissibility of a prior conviction *immediately* prior to the prosecutor's cross-examination, even though the defense failed to object when the prior conviction was introduced [by the prosecutor], as requiring the defendant to make "yet another objection only a short time after the court's ruling to admit the evidence would be to exalt form over substance."); *Hopkins v. State*, 137 Md.App. 200, 203–04, 768 A.2d 89 (2001) (no waiver despite defense's failure to object to prosecutor's questions eliciting evidence of defendant's prior conviction during his cross-examination where defense counsel filed a pre-trial motion *in limine* seeking to exclude the prior conviction, the motion was denied, *and* the defense sought to "revisit" the issue prior to defendant taking the stand).

Rather, defense counsel also delved into the fact that Cure was currently on probation, reported weekly to the "Violence Prevention Unit," and called the unit twice a week. This line of questioning ended only when the *State* objected, on relevance grounds.

The prosecutor did not cross-examine Cure on his prior conviction, or the sentence imposed. In fact, when Cure gave a clearly unresponsive answer—about his previous term of incarceration in reply to the State's first question asking how long he had known McNeil—the prosecutor cut him off and directed him back to the question posed. Nor did the prosecutor refer to Cure's prior conviction in closing argument.

In contrast, in *Brown* the defense moved to preclude the State from introducing evidence of his prior conviction after the State rested its case in chief. *Brown, supra,* 373 Md. at 255, 817 A.2d 241. In argument over its admissibility, "the State . . . insisted it was admissible." *Id.* Brown's co-defendant then took the stand, followed by Brown himself. *Id.* at 255–56, 817 A.2d 241. Accordingly, unlike the present case, the defense's objection to the admission of Brown's prior conviction was made shortly before Brown's testimony, and the record in that case indicated a clear and unequivocal intention by the State to introduce Brown's prior conviction and the defense's adamant opposition. *Id.* at 255, 817 A.2d 241. Finally, although Brown had admitted his prior conviction in his direct testimony, the State, on cross-examination, had him confirm that admission. *Id.* at 256, 817 A.2d 241. We are persuaded that the facts in the present case are sufficiently distinguishable from those in *Brown.* As we perceive no reason why the contemporaneous objection rule should be "bent" in this case, we hold that the issue presented by Cure is not preserved for our review.[6]

---

**6.** Nonetheless, even were we to conclude that the contemporaneous objection rule had been satisfied, we would still reach the conclusion that Cure, by addressing the first-degree arson conviction in his direct testimony, has waived appellate review of the issue.

*First–Degree Arson as an Impeachable Offense*

■ Lest Cure conclude that he had been hoisted by his own petard, we would hold that, even if preserved, the trial court did not abuse its discretion in admitting the first-degree arson conviction for impeachment purposes. We explain.

Maryland Rule 5–609, governing impeachment by evidence of conviction of a prior crime, provides:

(a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) **Time limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

(c) **Other limitations.** Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if: (1) the conviction has been reversed or vacated; (2) the conviction has been the subject of a pardon; or (3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

(d) **Effect of plea of nolo contendere.** For purposes of this Rule, "conviction" includes a plea of nolo contendere followed by a sentence, whether or not the sentence is suspended.

■ The Court of Appeals adopted the Rule in recognition of the danger of unfair prejudice to a defendant with a prior conviction who wishes to testify on his own behalf. *Jackson v. State,* 340 Md. 705, 715, 668 A.2d 8 (1995). "The

Rule is designed to prevent a jury from convicting a defendant based on his past criminal record, or because the jury thinks the defendant is a bad person." *Id.* To "minimize this danger of prejudice," the Rule "imposes limitations on the use of past convictions in an effort to discriminate between the informative use of past convictions to test credibility, and the pretextual use of past convictions where the convictions are not probative of credibility but instead merely create a negative impression of the defendant." *Id.* at 715–16, 668 A.2d 8.

Maryland Rule 5–609 essentially creates a three-part test for determining the admissibility of prior convictions for impeachment purposes. *King v. State,* 407 Md. 682, 698, 967 A.2d 790 (2009). First, the prior conviction must be within the "eligible universe" of crimes, which consists of two categories: infamous crimes and other crimes relevant to a witness's credibility. *Id.* "Infamous crimes" include treason, common law felonies, and other offenses generally classified as *crimen falsi.* *Id.* at 699, 967 A.2d 790.[7] Arson was a felony at common law and thus an "infamous crime." *Robinson v. State,* 4 Md.App. 515, 523 n. 3, 243 A.2d 879 (1968). First-degree arson, now a statutory offense at Md.Code (2002), Crim. Law, § 6–102, "simply represents an enlargement of the common law felony of arson." *DeBettencourt v. State,* 48 Md.App. 522, 523, 428 A.2d 479 (1981). Cure does not dispute that his first-degree arson conviction falls within the eligible universe of impeachable convictions.[8]

---

**7.** "Crimes historically classified as *crimen falsi* include crimes in the nature of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully." *Beales v. State,* 329 Md. 263, 269–70, 619 A.2d 105 (1993).

**8.** First-degree arson is established as a crime in Md.Code (2002), Crim. Law, § 6–102 as follows:

(a) *Prohibited.*—A person may not willfully and maliciously set fire to or burn:

(1) a dwelling; or

(2) a structure in or on which an individual who is not a participant is present.

The second step requires a determination by the trial court that the prior conviction is less than 15 years old, not reversed on appeal, or subject to a pardon or pending appeal. *King, supra,* 407 Md. at 699, 967 A.2d 790. There is no dispute that Cure's prior conviction dated to March 2001, and otherwise met this step for admissibility.

If the first two steps are satisfied, the trial court must then determine whether "the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party." *Id.; see State v. Westpoint,* 404 Md. 455, 478, 947 A.2d 519 (2008) (citation omitted). " 'This third step is clearly a matter of trial court discretion.' " *Id.* (quoting *State v. Giddens,* 335 Md. 205, 214, 642 A.2d 870 (1994)). "When the trial court exercises its discretion in these matters, we will give great deference to the court's" ruling and "will not disturb that discretion unless it is clearly abused." *Jackson, supra,* 340 Md. at 719, 668 A.2d 8. *See also Prout v. State,* 311 Md. 348, 363–64, 535 A.2d 445 (1988) ("Such exercise of discretion will be accorded every reasonable presumption of correctness and will not be upset except in a clear abuse of discretion.").

In balancing the probative value of the prior conviction against the danger of unfair prejudice, the Court of Appeals has suggested the following factors for the court's consideration:

(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility.

(b) *Penalty.*—A person who violates this section is guilty of the felony of arson in the first degree and on conviction is subject to imprisonment not exceeding 30 years or a fine not exceeding $50,000 or both.

(c) *Prohibited defense.*—It is not a defense to a prosecution under this section that the person owns the property.

*Jackson, supra,* 340 Md. at 717, 668 A.2d 8. These factors "should not be considered mechanically or exclusively," but rather should be viewed as "a useful aid to trial courts in performing the balancing exercise mandated by the Rule." *Id.*

As we have noted, the trial judge, after confirming that Cure's prior conviction satisfied the first two steps of the Rule 5–609 factors, reasoned that arson, like possession with intent to distribute, is "done secretly, covertly with knowledge that an individual is violating the law." In response to defense counsel's assertion that the prior arson conviction "would like [sic] so inflame the jury that he couldn't get a fair trial," the trial judge, recognizing that "all evidence against the defendant is prejudicial," ruled that a prior arson conviction "is not prejudicial in a legal sense." [9]

Cure's sole contention on appeal is that "the impeachment value of an arson conviction is virtually non-existent" while "its potential for prejudice is great." In essence, he argues that a conviction for first-degree arson is not relevant to credibility. He does *not* contend that the other *Jackson* factors are weighted against admissibility in this instance, but asserts that, in weighing the probative value of a prior conviction against its prejudicial effect, "the most important" factor is the impeachment value of the crime. Based on the asserted lack of impeachment value of an arson conviction, Cure claims that the trial court abused its discretion when it ruled that the State could use the conviction to impeach him.

The State responds that the trial court's conclusion that arson is relevant to credibility "is not in error ... because a

---

**9.** Although the trial judge did not expressly address each of the factors set forth in *Jackson v. State,* 340 Md. 705, 717, 668 A.2d 8 (1995), it is clear from the exchange between the trial judge and counsel that he engaged in the necessary balancing before ruling that Cure's prior arson conviction could be admitted for impeachment purposes. "There is no requirement that the trial court's exercise of discretion be detailed for the record, so long as the record reflects that the discretion was in fact exercised." *Woodland, supra,* 337 Md. at 526, 654 A.2d 1314. Moreover, there is a "strong presumption that judges properly perform their duties." *Beales, supra,* 329 Md. at 273, 619 A.2d 105. Cure does not contend otherwise.

person would not commit a crime of significant consequence (specifically devastation of property and potential loss of life) unless he was so wantonly indifferent to the consequences as to be unworthy of credit." The State further argues that first-degree arson by definition involves "behavior [ ] so irrational that it casts a moral taint on the individual sufficient to impact his credibility." Additionally, the State argues that the remaining four *Jackson* factors weighed heavily in favor of admissibility in this case. Finally, the State points out that the trial "court properly instructed the jury on the limited use of impeachment evidence."

■■■ The parties do not cite any Maryland case that addresses the impeachment value of an arson conviction, nor have we found any Maryland appellate opinions addressing this precise question. We are persuaded, however, that, by virtue of the fact that arson was a common law felony, and thus an "infamous crime," it is *relevant per se* to credibility for purposes of impeachment under Md. Rule 5–609, albeit *not admissible per se.* History informs our analysis.

"At common law, one who had been convicted of treason, any felony, a misdemeanor involving dishonesty, or crimes related to the obstruction of justice, was considered incompetent to testify at any trial." *Giddens, supra,* 335 Md. at 214, 642 A.2d 870 (citation omitted). "Therefore, at common law, an individual convicted of an 'infamous crime' was disqualified from testifying." *Id.* (citing *Prout, supra,* 311 Md. at 359, 535 A.2d 445). In 1864, the General Assembly abrogated this prohibition by enacting a law permitting a person convicted of an infamous crime to testify, but allowing for the impeachment of his credibility by introduction of the prior conviction. *Id.* Under this law, "a conviction of an infamous crime, i.e., one of the common-law felonies or one of the *crimen falsi,* was admissible per se for impeachment purposes." *Beales v. State,* 329 Md. 263, 269, 619 A.2d 105 (1993) (citation omitted). "The admissibility of convictions for other, lesser crimes bearing on a witness's credibility was left to the discretion of the trial court." *Id.* "Convictions for non-infamous crimes which

do not bear upon the witness's propensity to be truthful under oath were not admissible." *Id.*

The first significant Maryland case to address impeachment of a witness with a prior conviction was *Nelson v. Seiler,* 154 Md. 63, 139 A. 564 (1927). In *Nelson,* the Court held that the trial court erred in permitting a defendant, in a civil suit arising out of an automobile accident, to be impeached with prior convictions involving violations of the motor vehicle law. *Id.* at 69, 139 A. 564. In so holding, the Court noted that impeachable convictions need not be "restricted to infamous crimes," but a non-infamous crime must "have some tendency to impeach credibility" in order to be admissible. *Id.* at 69, 139 A. 564.

Years later, in addressing whether a prior conviction for indecent exposure is admissible for impeachment purposes, the Court reiterated that if a crime "is an infamous crime" it is admissible for purposes of impeachment. *Ricketts v. State,* 291 Md. 701, 708, 436 A.2d 906 (1981). "However, if it is a lesser crime, then its admissibility must be determined under a different standard." *Id.* The Court then determined that indecent exposure is not an infamous crime and, as a "lesser crime," it "sheds no light on what it is the defendant has done and hence it is beyond the ken of any factfinder to assess what, if any, impact such conviction has upon the defendant's veracity." *Id.* at 713–14, 436 A.2d 906. The Court, therefore, held that indecent exposure is not admissible for impeachment purposes. *Id.* at 714, 436 A.2d 906.

In 1988, the Court of Appeals in *Prout, supra,* summarized the law of Maryland on impeachment of a witness with a prior conviction as follows:

> While we believe it is difficult to draw distinct lines on what crimes may be used to impeach, we think the law of this state may be generally summarized as holding that **to be admissible for impeachment purposes a conviction must be either a felony at common law or a *crimen falsi* and thus infamous, *or* a lesser crime bearing upon the witness's credibility.** Stated another way, **crimes, *other***

*than those that are infamous,* whether misdemeanors or statutory felonies, **fall into the class of lesser crimes and may or may not reflect on one's tendency to be truthful. The determination of whether and, if so, when** *such* **convictions may be admitted is left to the sound discretion of the trial judge.** If the crime being offered to impeach says nothing about the likelihood of the witness's propensity to be truthful under oath, it is irrelevant on that issue and should not be admitted. If the prior conviction passes this relevancy test, then the trial court must determine if its probative value outweighs it prejudicial effect. In other words, because evidence is legally admissible does not necessarily require its admission. Only if the trial judge, in the exercise of his discretion, feels that the prior conviction rationally carries probative value on the issue of truth and veracity of the witness, should the evidence be admitted.

*Prout, supra,* 311 Md. at 363, 535 A.2d 445 (emphasis added).

In 1991, the Court of Appeals adopted Md. Rule 1–502, the predecessor to Md. Rule 5–609 and "nearly identical" to it. *Westpoint, supra,* 404 Md. at 476, 478, 947 A.2d 519. As noted above, the Rule "essentially create[d] a three-part test for determining whether prior convictions may be admitted for impeachment purposes." *Id.* at 477, 947 A.2d 519 (quoting *Giddens, supra,* 335 Md. at 213, 642 A.2d 870).

In 1993, the Court of Appeals in *Beales, supra,* addressed the application of Md. Rule 1–502 in the context of the use of a prior theft conviction to impeach a witness's credibility. In *Beales,* the State argued that because theft was a *crimen falsi* it was admissible *per se* for impeachment purposes and, therefore, step three of the new rule requiring the trial court to weigh the probative value of the conviction against the prejudicial effect did not apply, in effect suggesting that the conviction was *per se* admissible. *Beales, supra,* 329 Md. at 270, 619 A.2d 105.

The Court disagreed, and determined that the new rule "by design, differs from earlier Maryland law in that it abandons

every vestige of per se admissibility regarding evidence of prior convictions for the purposes of impeachment." *Id.* at 273, 619 A.2d 105. Thus, "the new rule now requires a preliminary determination of probativeness and potentially unfair prejudice for *all* convictions used to impeach credibility." *Id.* at 270, 619 A.2d 105 (emphasis in the original). In other words, the "balancing test" of step three "applies equally to infamous crimes and to other crimes bearing on credibility." *Id.* at 271, 619 A.2d 105. Otherwise, "the concept of an infamous crime retains its traditional meaning." *Id.* at 269, 619 A.2d 105.

In *Jackson, supra,* the Court affirmed its interpretation of Md. Rule 5–609 as eliminating a "rigid approach" of *per se* admissibility or inadmissibility of certain convictions for impeachment purposes. *Jackson, supra,* 340 Md. at 714, 668 A.2d 8. Accordingly, the Court disagreed with the petitioner's assertion that the trial court abused its discretion when it permitted the State to impeach him with a prior theft conviction when he was on trial for theft. *Id.* at 719, 668 A.2d 8.

In sum, we glean from the history sketched above, and from the Court's adoption and interpretation of what is now Md. Rule 5–609, that, although a prior arson conviction is no longer admissible *per se* on the grounds that it is an "infamous crime," the fact that it is an "infamous crime" in and of itself indicates that it is germane to a witness's credibility. Our conclusion is borne out by the plain language of Md. Rule 5–609, which provides that a prior conviction may be admissible "if (1) *the crime was an infamous crime* or other crime relevant to the witness's credibility." Md. Rule 5–609(a)(1) (emphasis added). It is only crimes *other than infamous crimes* which require the trial court to preliminarily determine whether they are crimes relevant to truthfulness.

Accordingly, we reject Cure's contention that "the impeachment value of an arson conviction is virtually non-existent." Rather, the impeachment value is assumed by virtue of the fact that it is an "infamous crime." Although arson may have less impeachment value than a *crimen falsi,* such as embezzle-

ment or theft, its impeachment value is but one of five factors set forth in *Jackson, supra,* to be considered in balancing the probative value of the prior conviction against the danger of unfair prejudice.

Applying the *Jackson* factors to the case before us, we are not persuaded that the trial judge abused his discretion when ruling that Cure's prior conviction for first-degree arson could be used to impeach his credibility. Again, the conviction inherently has impeachment value by virtue of the fact that it is an "infamous crime."

Second, the conviction occurred nearly eight years prior to the trial in this case. Given the lapse of time, its prejudicial impact was less significant than a more recent conviction, but not so distant as to render nil its probative value. Third, the prior arson conviction is very dissimilar to the CDS offenses then before the jury, which weighs in favor of admissibility, as there is less danger in the jury assuming that because he committed arson he probably is guilty of the CDS violations.

The fourth and fifth factors—the importance of the defendant's testimony and the centrality of the defendant's credibility—implicate a defendant's right to testify and the State's right to impeach the witness on cross-examination. *Jackson, supra,* 340 Md. at 721, 668 A.2d 8 (citations omitted). In discussing these rights, the Court in *Jackson* noted: "Where credibility is the central issue, the probative value of the impeachment is great, and thus weighs heavily against the danger of *unfair* prejudice." *Id.* (emphasis in the original). Cure denied any involvement in possessing or selling illegal narcotics on the day of his arrest. He also claimed to be wearing clothes distinctly different from the detectives' description of the clothing worn by the suspect. As such, his credibility was clearly central to the case and, therefore, it was important for the State to present evidence bearing on his credibility. Accordingly, factors four and five weighed in favor of admitting Cure's prior arson conviction. *Id.* at 721–22, 668 A.2d 8.

Cure's reliance on *State v. Duckett,* 306 Md. 503, 510 A.2d 253 (1986), is misplaced. In *Duckett,* the Court of Appeals

held that the trial court erred in allowing the prosecutor to impeach the defendant—on trial for assault with intent to maim, assault, and carrying a weapon openly with intent to injure—with a prior conviction for assault and battery. *Id.* at 512, 510 A.2d 253. In holding that the prior conviction was inadmissible, the Court noted that "battery" was "a common law offense" without a statutorily prescribed penalty and involved "*any* unlawful force used against the person of another, *no matter how slight.*" *Id.* at 510, 510 A.2d 253 (emphasis in the original) (citation omitted). Therefore, the Court reasoned that, because "the types of offenses which fall within the ambit of the crime of battery vary widely[,] . . . nothing can be shown concerning the probable veracity" of a witness "by the name of the crime battery." *Id.* at 510–11, 510 A.2d 253. As such, "[t]here is no basis for the trial judge to determine whether the conviction impacts upon the witness's credibility." *Id.* at 512, 510 A.2d 253. In short, as arson, unlike battery, is undisputedly an "infamous crime," the Court's reasons in *Duckett* for holding that a prior conviction for battery is inadmissible for impeachment purposes provide no comfort to Cure.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**