26 A.3d 899

Deltavia CURE

v.

STATE of Maryland.

No. 135, Sept. Term, 2010.

Court of Appeals of Maryland.

Aug. 16, 2011.

302

Allison Pierce Brasseaux, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Susannah E. Prucka, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

HARRELL, J.

We issued a writ of certiorari in this case to revisit a question we addressed most recently in *Brown v. State,* 373 Md. 234, 817 A.2d 241 (2003), namely, whether a defendant, who reveals a prior conviction in his or her direct examination during the defense case-in-chief (knowing that the trial judge ruled *in limine* that the State will be allowed to impeach him or her with the prior conviction in cross-examination), waives his or her right to appellate review of the trial judge's *in limine* ruling. Secondly, this case presents an opportunity to consider the admissibility *vel non* of a prior arson conviction for impeachment purposes.

Deltavia Cure ("Cure" or "Petitioner") challenges here the judgment of the Court of Special Appeals (affirming the judgment of the Circuit Court for Baltimore City), which reasoned in its supporting opinion that, under the plurality opinion in *Brown*, a defendant who acknowledges, on direct examination in the defense case, the existence of a prior conviction, waives his or her right to appellate review of the trial judge's prior determination that the conviction may be used by the prosecution for impeachment purposes. Despite holding the issue to be waived, the Court of Special Appeals proceeded to reach the merits of using Cure's prior conviction for arson as impeachment evidence, explaining that the trial court did not abuse its discretion in ruling *in limine* that Cure's prior arson conviction was admissible for impeachment purposes.

Before this Court, Cure argues generally that, on the issue of waiver, the plurality opinion for the Court in *Brown* is not controlling because it represented the views of only three of the seven participating judges. Moreover, Cure contends that, knowing the State will be allowed to impeach him if he testifies, "drawing the sting out" of a prior conviction is a valid trial tactic that serves to further the policies underlying the Rules of Evidence.[1] Denying a defendant this potential tactical maneuver, by threat of waiver, disadvantages him or her unfairly. Finally, Cure avers that an arson conviction has little impeachment value and, under these facts, fails the balancing test established in Maryland Rule 5–609.

We hold, for reasons to be explained more fully *infra*, that when a defendant elects to testify and, in doing so, testifies affirmatively on direct examination to the existence of a prior conviction in order to "draw the sting out" of that conviction, he or she does not waive necessarily his or her right to appellate review of the merits of the trial judge's prior *in limine* determination that the prosecution may use the conviction for impeachment purposes. Upon reaching the merits of

---

1. *See infra*, Op. at 314–16, 26 A.3d at 907–08.

Cure's argument vis á vis the use of his conviction of arson for impeachment purposes, we hold that the trial judge did not abuse his discretion in ruling that Cure's prior arson conviction could be used. Accordingly, we affirm the judgment of the Court of Special Appeals.

## FACTS AND LEGAL PROCEEDINGS

On 14 March 2008, Baltimore City Police arrested and charged Cure with two counts of possession with intent to distribute a controlled dangerous substance, two counts of conspiracy to distribute a controlled dangerous substance, and two counts of conspiracy to possess with intent to distribute a controlled dangerous substance. The arrest followed an investigation by Detective Randolph, who testified that he observed Cure engaging in behavior resembling the dealing of drugs in the 800 block of North Bond Street in Baltimore City. According to Detective Randolph, Cure was wearing a black skull cap, a black sweatshirt with a red design on the back, and blue jeans. Cure testified, however, that at the time of his arrest, he was wearing a white hooded sweatshirt with a black fingernail design and pajama pants. Cure also denied involvement in any drug activity and contended that the police mistook him for someone else.

On the first day of his trial, 12 January 2009, Cure moved for a ruling that the prosecution not be allowed to introduce certain of Cure's prior convictions, should he testify. The following exchange occurred:

[DEFENSE COUNSEL]: Mr. Cure has two prior convictions that could be used to impeach him if he decides to testify. I mean, we haven't made that decision yet, obviously and so, I mean we would want a hearing as to whether or not the State would be allowed to use those convictions to impeach him.

[COURT]: Well, what are they?

[DEFENSE COUNSEL]: So, I didn't know—one is—they were both when he was a juvenile, but was charged and

convicted as an adult. One is attempted murder and the other was arson.

[PROSECUTOR]: Your Honor, actually the State doesn't believe any attempt falls under—

[COURT]: Neither do I.

[PROSECUTOR]:—falls under, but there was a, let me, let me back up first, again. There was a conviction separately of first degree arson. The State would like to bring that up and then in that, attempted first degree murder case, there was a conviction for the use of a handgun in the commission of a felony.

[COURT]: Well, that's not an impeachable [sic].

[PROSECUTOR]: That leaves us with the first degree arson, Your Honor.

[COURT]: Yeah and the same argument that applies to possession with intent to distribute applies to arson. It's done secretly, covertly with knowledge that an individual is violating the law. Essentially, it's the same reasoning. I'd let that in.

[DEFENSE COUNSEL]: Yes, Your Honor, and certainly we would object and my argument would be obviously that the prejudicial effect of an arson would like so inflame the jury that he couldn't get a fair trial.

[COURT]: That may be prejudicial, but in a legal sense, it's not. Of course, albeit, did that happen within the last 15 years?

[PROSECUTOR]: It did, Your Honor. I'll have the exact dates for you in a second.

[COURT]: Do you agree it happened within the last 15 years?

[DEFENSE COUNSEL]: Yes, Your Honor.

[PROSECUTOR]: March of 2001, Your Honor.

[COURT]: Mm-hmm and all evidence that's against the defendant is prejudicial. The question is, is it prejudicial in a legal sense and I don't believe it is.

[DEFENSE COUNSEL]: Yes, Your Honor.

On the second day of the trial, Cure, knowing of the trial judge's ruling on his earlier motion *in limine* regarding use of the arson conviction, elected to testify in his own defense. Prior to testifying, Cure's attorney advised him on the record of his Fifth Amendment rights, as well as reminding him of the court's ruling that the arson conviction would be admissible for impeachment purposes during any cross-examination by the prosecutor. The following relevant exchange occurred:

> [DEFENSE COUNSEL]: Now, do you understand that we've already had a hearing on this and [the judge] has ruled that if you testify, the State can ask you about your arson conviction, right, and you understand that the jury can take that into consideration not as to whether you're guilty of this charge or not. However, they can take that into consideration as to whether your testimony is believable or not. Do you understand that?
>
> [PETITIONER]: Yes.
>
> [DEFENSE COUNSEL]: Now that you know all of that, do you still want to testify?
>
> [PETITIONER]: Yes.

During direct examination, Cure and his defense counsel attempted to "draw the sting out" [2] of his prior arson conviction by acknowledging it. The revelation unfolded as follows:

---

**2.** *See Brown v. State*, 373 Md. 234, 237, 817 A.2d 241, 243 (2003) ("The act of preemptively disclosing evidence of a defendant's prior convictions on direct examination has been variously characterized as 'drawing the sting', 'lancing the boil,' and 'inoculating the jury.'" (quoting L. Timothy Perrin, *Pricking Boils, Preserving Error: On the Horns of a Dilemma After Ohler v. United States*, 34 U.C. DAVIS L. REV. 615, 616 (2001))). The rationales underlying this tactic are that (1) juries are more likely to trust a defendant who volunteers information that could be considered detrimental; (2) the risk of unfair prejudice due to juries believing that a defendant who does not disclose a conviction is hiding the full truth; and (3) the manner and context of the disclosure are controlled by the defense counsel, allowing for a more sympathetic presentation. *See Brown*, 373 Md. at 237–38, 817 A.2d at 243. As the Court in *Brown* observed: "The prevailing attitude amongst both practitioners and scholars of trial advocacy is that preemptive disclosure is a common and effective tactic for dealing with the threat of impeachment by prior conviction." *Brown*, 373 Md. at 238, 817 A.2d at 243.

[DEFENSE COUNSEL]: Now, this is not your first brush with the law. In fact, you have a prior conviction; is that correct?

[PETITIONER]: Yes, sir.

[DEFENSE COUNSEL]: And that conviction is for first degree arson; is that correct?

[PETITIONER]: Yes, sir.

[DEFENSE COUNSEL]: You're on probation for that right now; aren't you?

[PETITIONER]: Yes.

[DEFENSE COUNSEL]: And you served time for that; didn't you?

[PETITIONER]: Yes.

[DEFENSE COUNSEL]: When was that conviction?

[PETITIONER]: That was—I actually was convicted March the 7th, 2001.

[DEFENSE COUNSEL]: 2001. How old were you at the time that this alleged offense took place?

[PETITIONER]: I was 16 at the time.

[DEFENSE COUNSEL]: You were 16 years old.

[PETITIONER]: Yes, sir.

[DEFENSE COUNSEL]: Okay. So and in fact, you're on probation to the Violent Offenders Unit—

[PETITIONER]: Yeah, it's the Violence Prevention Unit.

[DEFENSE COUNSEL]: And what does that mean?

[PETITIONER]: Well, basically what it is is people who have been convicted from my understanding, what it is is that people have been convicted of a violent crime, they just implemented this as I believe my PO [Parole Officer] had told me—

[PROSECUTOR]: Objection.

[THE COURT]: Sustained.

[DEFENSE COUNSEL]: And how often do you have to report?

[PETITIONER]: Every single week.

[DEFENSE COUNSEL]: Every single week.

[PETITIONER]: And call in twice a week.

[PROSECUTOR]:Objection. Relevance.

[THE COURT]: Okay. Go ahead.

During cross-examination, the State did not inquire directly regarding the arson conviction. The only exchange in cross-examination that touched indirectly on the prior arson conviction was in Cure's response to the prosecution's questioning about the alleged accomplice (McNeil) in the present case. The exchange was as follows:

[PROSECUTOR]: Sir, how long have you known Mr. McNeil?

[PETITIONER]: Well, as you brought up my incarceration, I was locked up for seven and a half years. So I just—

The jury returned a guilty verdict as to each count against Cure. The trial judge sentenced Cure to three concurrent ten-year terms of incarceration for the convictions for possession with intent to distribute heroin, possession with intent to distribute cocaine, and conspiracy to distribute heroin.

■ Cure appealed timely to the Court of Special Appeals, arguing that the trial court abused its discretion by ruling that he could be impeached with his prior arson conviction. The Court of Special Appeals, in a reported opinion, *Cure v. State*, 195 Md.App. 557, 561, 7 A.3d 145, 147 (2010), and relying upon *Brown*, held that by introducing the conviction during direct examination, Cure waived his right to appellate review of the trial court's *in limine* decision to allow the State to impeach him with the prior arson conviction. *See Cure*, 195 Md.App. at 573, 7 A.3d at 154 ("As we perceive no reason why the contemporaneous objection rule [3] should be 'bent' in this case,

---

3. The contemporaneous objection rule refers generally to either Md. Rule 4–323(a) or the principle "that[,] ordinarily, a pre-trial motion *in limine* to exclude evidence does not suffice to constitute or preserve an objection to the evidence—the objection must be made when the evidence is offered." *Brown*, 373 Md. at 258, 817 A.2d at 255. Maryland Rule 4–323(a) reads, in pertinent part, "[a]n objection to the admission of evidence shall be made at the time the evidence is offered

we hold that the issue presented by Cure is not preserved for our review."). The intermediate appellate court, finding ambiguity regarding this Court's position on the waiver issue due to the "unusual disposition" of *Brown,*[4] distinguished *Brown* from *Cure's* case. *See Cure,* 195 Md.App. at 571, 7 A.3d at 152. Our appellate colleagues reasoned that, even if they were to hold that Cure's objection to the *in limine* ruling that his prior arson conviction would be admissible for impeachment purposes had not been waived through his testimony about it, he failed nonetheless to meet the requirements for an exception to the contemporaneous objection rule under the rationale of the dissent in *Brown. See Cure,* 195 Md.App. at 572, 7 A.3d at 153 ("The record before us, however, does not reflect that the defense renewed its objection to the court's ruling of the previous day that the State could impeach Cure with the prior arson conviction, or that *the trial court* affirmed its earlier ruling." (footnote omitted)). The appellate court found significant: (1) Cure did not renew his objection to the admittance of the conviction on the day of his testimony; (2) the defense elicited more information about the conviction than simply its existence; and (3) the prosecution did not mention the conviction directly during cross-examination of Cure and, therefore, concluded that it was "persuaded that the facts in the present case are sufficiently distinguishable from those in *Brown." Cure,* 195 Md.App. at 573, 7 A.3d at 154.

Even though the Court of Special Appeals held that Cure waived his right to appellate review of the admissibility of his conviction for impeachment purposes, the panel (as appellate courts are wont to do frequently as an exercise in completeness and "belt and suspenders" support of its judgment) addressed the merits of the issue, stating that, "although a prior arson conviction is no longer admissible *per se* on the grounds that it is an 'infamous crime,' the fact that it is an 'infamous crime' in and of itself indicates that it is germane to

---

or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived."

4. *See infra,* Op. at 316–21, 26 A.3d at 909–11.

a witness's credibility." *Cure,* 195 Md.App. at 581, 7 A.3d at 159. The Court concluded: "Accordingly, we reject Cure's contention that 'the impeachment value of an arson conviction is virtually non-existent.' Rather, the impeachment value is assumed by virtue of the fact that it is an 'infamous crime.'" *Id.* Accordingly, the panel of the intermediate appellate court stated that, waiver aside, it was not an abuse of discretion for the trial court to rule that Cure's arson conviction would be admissible for impeachment purposes.

Cure filed timely a petition for writ of certiorari, which we granted, *Cure v. State,* 418 Md. 190, 13 A.3d 798 (2011), to consider the following questions:

(1) When the trial court ruled prior to jury selection that the State could impeach Mr. Cure with his prior conviction for first-degree arson, did Mr. Cure waive his right to complain on appeal about the Court's ruling by testifying about the conviction during his direct examination?

(2) Did the trial court abuse its discretion when it ruled that the State could impeach Mr. Cure with his prior conviction for first-degree arson?

For reasons to be explained more fully *infra,* we hold that, on this record, Cure did not waive his ability to seek appellate review of the trial judge's ruling that the prior conviction for arson may be used potentially for impeachment purposes. On the merits of Cure's argument regarding the impeachment value of a prior arson conviction, we hold that the trial court did not abuse its discretion by allowing use of Cure's prior arson conviction.

## DISCUSSION

### I. *Waiver.*

■ In *Ohler v. United States,* 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), the United States Supreme Court addressed whether a defendant's "drawing the sting out" of a prior conviction by testifying regarding the conviction on direct examination amounts to waiver of appellate review of the conviction's admissibility for impeachment purposes. Maria Ohler was charged with the importation of and possession

with intent to distribute marijuana. *Ohler,* 529 U.S. at 754–55, 120 S.Ct. at 1852, 146 L.Ed.2d at 829. The Government filed pre-trial motions seeking an *in limine* ruling on whether Ohler's prior conviction for possession of methamphetamine could be used as either character or impeachment evidence. *See Ohler,* 529 U.S. at 755, 120 S.Ct. at 1852, 146 L.Ed.2d at 829. Although the federal district court ruled that the conviction would not be allowed as character evidence, it held that the conviction could be used as impeachment evidence. *Id.* Upon direct examination during the defense case-in-chief, presumably to "draw the sting out" of the conviction, Ohler testified regarding her prior conviction. *See id.* Ultimately, she was convicted on both of the marijuana counts. *Id.* Ohler appealed on the ground that it was improper for her prior conviction for possession to be used as impeachment evidence. *Ohler,* 529 U.S. at 755, 120 S.Ct. at 1852–53, 146 L.Ed.2d at 829–30. The Court of Appeals for the Ninth Circuit affirmed, holding that, by testifying to the conviction under direct examination, Ohler waived the issue for appellate review. *Ohler,* 529 U.S. at 755, 120 S.Ct. at 1853, 146 L.Ed.2d at 830.

In a five-to-four decision, the U.S. Supreme Court held that the issue was waived on appeal, reasoning that, "[g]enerally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler,* 529 U.S. at 755, 120 S.Ct. at 1853, 146 L.Ed.2d at 830. The Court also rejected Ohler's argument that applying the waiver rule in this situation "compels a defendant to forgo the tactical advantage of pre-emptively introducing the conviction in order to appeal the *in limine* ruling," explaining that, ultimately, both sides must make many strategic choices during trial. *Ohler,* 529 U.S. at 757, 120 S.Ct. at 1853, 146 L.Ed.2d at 830–31; *see Ohler,* 529 U.S. at 757, 120 S.Ct. at 1854, 146 L.Ed.2d at 831 ("Whatever the merits of these contentions, they tend to obscure the fact that both the Government and the defendant in a criminal trial must make choices as the trial progresses."). To highlight this particular tactical crossroads, the Court stated:

> The defendant must choose whether to introduce the conviction on direct examination and remove the sting or take her

chances with the prosecutor's possible elicitation of the conviction on cross-examination. The Government too, in a case such as this, must make a choice. If the defendant testifies, it must choose whether or not to impeach her by use of her prior conviction.

*Ohler,* 529 U.S. at 758, 120 S.Ct. at 1851, 146 L.Ed.2d at 831. Finally, the Court reasoned that, as held in *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984),[5] "[o]nly when the government exercises its option to elicit the testimony is an appellate court confronted with a case where, under the normal rules of trial, the defendant can claim the denial of a substantial right if in fact the district court's *in limine* ruling proved to be erroneous." *Ohler,* 529 U.S. at 759, 120 S.Ct. at 1854–55, 146 L.Ed.2d at 832. The Court concluded: "For these reasons, we conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admissions of such evidence was error." *Ohler,* 529 U.S. at 760, 120 S.Ct. at 1855, 146 L.Ed.2d at 832.

Justice Souter's dissent rejected the Majority's reliance upon *Luce. See Ohler,* 529 U.S. at 761, 120 S.Ct. at 1856, 146

---

**5.** In *Luce v. United States,* 469 U.S. 38, 39, 105 S.Ct. 460, 462, 83 L.Ed.2d 443, 446 (1984), the defendant was charged with conspiracy and possession with intent to distribute cocaine. The trial court ruled that the defendant's prior conviction for possession of a controlled substance could be used for impeachment if the defendant testified as to his prior history with drugs. *Luce,* 469 U.S. at 39–40, 105 S.Ct. at 462, 83 L.Ed.2d at 446–47. The defendant did not testify, and the jury returned guilty verdicts. *Luce,* 469 U.S. at 40, 105 S.Ct. at 462, 83 L.Ed.2d at 447. On appeal, the Supreme Court noted that "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Luce,* 469 U.S. at 41, 105 S.Ct. at 463, 83 L.Ed.2d at 447. Where, as in *Luce,* the defendant does not testify, "the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction." *Luce,* 469 U.S. at 42, 105 S.Ct. at 463, 83 L.Ed.2d at 448. The Court concluded ultimately, "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce,* 469 U.S. at 43, 105 S.Ct. at 464, 83 L.Ed.2d at 448.

L.Ed.2d at 833 (Souter, J., dissenting).[6] In contrast to the defendant in *Luce*, Ohler testified in her defense. *Ohler*, 529 U.S. at 755, 120 S.Ct. at 1852, 146 L.Ed.2d at 829. Whereas the harm in *Luce* was purely speculative, in *Ohler*, because the defendant testified, there was "a factual record on which Ohler's claim can be reviewed . . . and there is no question that the *in limine* ruling controlled her counsel's decision to enquire about the earlier conviction." *Ohler*, 529 U.S. at 761, 120 S.Ct. at 1856, 146 L.Ed.2d at 833. For this reason, the dissent explained "the case raises none of the practical difficulties on which *Luce* turned, and *Luce* does not dictate today's result." *Id.*

The main thrust of Justice Souter's dissent addressed the Majority's stance that "there is nothing 'unfair' . . . about putting petitioner to her choice in accordance with the normal rules of trial." *Ohler*, 529 U.S. at 763, 120 S.Ct. at 1857, 146 L.Ed.2d at 834–35. Justice Souter argued that "[a]ny claim of a new rule's fairness under normal trial conditions will have to stand or fall on how well the rule would serve the objects that trials in general, and the Rules of Evidence in particular, are designed to achieve." *Ohler*, 529 U.S. at 763, 120 S.Ct. at 1857, 146 L.Ed.2d at 835. The Rules are structured, Justice Souter averred, to facilitate the pursuit of truth rather than to outline particular trial strategies. *See id.* ("The question is not which side gains a tactical advantage, but which rule assists in uncovering the truth."). "Drawing the sting out" of a prior conviction is, therefore, a valid trial tactic because of the prejudicial effect that might result if a defendant was perceived as concealing the full truth. *See Ohler*, 529 U.S. at 764, 120 S.Ct. at 1857, 146 L.Ed.2d at 835 ("The jury may feel that in testifying without saying anything about the convictions the defendant has meant to conceal them. The jury's

---

6. *See Sherwood Brands, Inc., v. Great Am. Ins. Co.*, 418 Md. 300, 314 n. 13, 13 A.3d 1268, 1277 n. 13 (2011) ("With all due respect to the Bluebook, beyond this point in this opinion, we shall omit the parenthetical '(_____, J., dissenting)' from our pinpoint citation format, unless it is unclear from context that it is the dissenting opinion to which we are referring.").

assessment of the defendant's testimony may be affected not only by knowing that she has committed crimes in the past, but by blaming her for not being forthcoming when she seemingly could have been."). Because "drawing the sting out" avoids this unnecessary prejudice, the dissent explained, "[a]llowing the defendant to introduce the convictions on direct examination thus tends to promote fairness of trial without depriving the Government of anything to which it is entitled." *Id.* According to the *Ohler* dissent, as the underlying purpose of the Rules are served, a rule that punishes a defendant for utilizing this valid trial tactic with waiver of right to appeal is unnecessary. *Ohler,* 529 U.S. at 764, 120 S.Ct. at 1857–58, 146 L.Ed.2d at 835.

The majority of state appellate courts to consider the issue, after *Ohler,* rejected the reasoning of the *Ohler* Majority. Although *Ohler* is binding on federal courts, it is not binding on state courts because the waiver issue does not implicate federal constitutional principles that are mandatory upon state courts. *See Danforth v. Minnesota,* 552 U.S. 264, 280, 128 S.Ct. 1029, 1041, 169 L.Ed.2d 859, 871 (2008) ("This [federal] interest in uniformity, however, does not outweigh the general principle that States are independent sovereigns with plenary authority to make and enforce their own laws as long as they do not infringe on federal constitutional guarantees."). One reason many state appellate courts rejected the Majority's rationale in *Ohler* was because the decision ran contrary to preexisting state precedents. *See e.g., State v. Swanson,* 707 N.W.2d 645, 654 (Minn.2006) *("In light of our prior decisions on these issues,* we hold that a defendant who testifies about his convictions on direct examination after denial of a motion in limine to exclude those convictions has not forfeited the opportunity to appeal the admissibility of those prior convictions." (emphasis added)); *State v. Gary M.B.,* 270 Wis.2d 62, 676 N.W.2d 475, 482 (2004) ("The Court's formulation of the strategic waiver rule in *Ohler* is *contrary to the approach Wisconsin courts have utilized.* Finally, as the dissent recognized in *Ohler,* the majority's holding is against the great weight of academic authority." (emphasis added)); *State v.*

*Daly,* 623 N.W.2d 799, 801 (Iowa 2001) ("Moreover, the rule of waiver is *contrary to established precedent* in this state." (emphasis added)); *State v. Cross,* 2002 WL 234832, at *2, 2002 Wash.App. LEXIS 288, at *6 (Wash.Ct.App. 19 February 2002) ("Even if we were inclined to agree with the general holding in *Ohler,* that rule is *contrary to established precedent in this state.*" (emphasis added)).

Pre-*Ohler* contrary state precedents aside, other courts that have addressed the *Ohler* majority's reasoning have been disinclined to follow its lead, favoring, rather, the reasoning of Justice Souter's dissent. *See Pineda v. State,* 120 Nev. 204, 88 P.3d 827, 831 (2004) ("States that have rejected *Ohler* have done so because a trial court is fully aware of the proposed evidence and law when ruling on such evidence in limine, and it is a poor trial tactic for defense attorneys to wait for the prosecution to introduce such evidence on cross-examination."); *Zola v. Kelley,* 149 N.H. 648, 826 A.2d 589, 593 (2003) ("We therefore decline to follow *Ohler* and conclude that when a trial judge makes a definitive pretrial ruling that evidence of a prior conviction is admissible, a party's preemptive introduction of that evidence does not automatically waive the issue for appellate review."); *State v. Keiser,* 174 Vt. 87, 807 A.2d 378, 388 (2002) ("Without recounting at length the other reasons and authority cited by the dissent in *Ohler* for not finding waiver in circumstances such as these, we adopt its reasoning in concluding that defendant did not waive his objection to the admission of his prior DWI's when he testified to them on direct examination rather than waiting for the State to elicit them."); *State v. Thang,* 145 Wash.2d 630, 41 P.3d 1159, 1168 (2002) ("We agree with Justice Souter's analysis. A defense lawyer who introduces preemptive testimony only after losing a battle to exclude it cannot be said to introduce the evidence voluntarily.").[7]

_____

7. By our count, only two of nine state appellate courts addressing this issue subsequent to *Ohler* adopted the stance of *Ohler's* majority. *See Dodd v. State,* 100 P.3d 1017, 1039 (Okla.Crim.App.2004) (citing state precedent rather than *Ohler* ); and *Rivers v. State,* 792 So.2d 564, 566 (Fla.Dist.Ct.App.2001) ("[W]e conclude that counsel subsequently

In Maryland, we spoke to this issue in *Brown.* Calvin Brown, who was on trial for second degree assault, had been convicted previously of possession of a controlled dangerous substance with intent to distribute. *See Brown,* 373 Md. at 235, 817 A.2d at 242. At the close of the State's case, Brown argued to the trial judge that the prior conviction should not be admissible as impeachment evidence, as the risk of unfair prejudice outweighed its probative value. *Brown,* 373 Md. at 236, 817 A.2d at 242. The trial court disagreed. *Id.* Following this ruling,

> Petitioner elected to testify on his own behalf. During his direct examination, petitioner admitted that he had been convicted of the criminal offense of possession with intent to distribute a controlled dangerous substance. On cross-examination, in response to the State's question, petitioner confirmed the conviction. The jury convicted petitioner and the trial court sentenced him to a term of imprisonment of eight years.

*Id.* Brown appealed to the Court of Special Appeals, which affirmed in an unreported opinion. *Id.* Before the Court of Appeals, Brown (similar to Cure) argued, that (1) "drawing the sting out" of a prior conviction should not constitute a waiver of appellate review as to the admissibility of that conviction for impeachment purposes, and (2) that his prior conviction for possession with intent to distribute was more prejudicial than it was probative of his character for truthfulness. *See Brown,* 373 Md. at 237, 817 A.2d at 242–43. The Court fractured on how to decide the case. As Judge Wilner explained in dissent:

> This is a peculiar setting. Judge Raker's opinion announces the judgment of the Court. She would hold that by revealing his prior conviction on direct examination, petitioner waived any right to complain about the trial court's earlier ruling that evidence of that conviction was admissi-

---

waived the right to challenge the issue on direct appeal by preemptively introducing the evidence of the prior adjudication during direct examination." (citing *Ohler* )).

ble. Only two other judges share that view, however. I disagree with it, as do Chief Judge Bell and Judge Eldridge. Although Judge Harrell agrees that the issue was not waived, he would hold that evidence of the conviction was nonetheless admissible. I disagree with that as well; so do Chief Judge Bell and Judges Eldridge and Raker. When coupled with Judge Raker's view that petitioner's complaint was waived, however, Judge Harrell's conclusion as to admissibility suffices to create four votes to affirm the judgment.

*Brown*, 373 Md. at 251–52, 817 A.2d at 251–252. This "peculiar setting" is what the Court of Special Appeals identified here as creating ambiguity in the ultimate holding of the Court, and merits us revisiting the question of whether a defendant waives his or her right to appellate review of the admissibility of a prior conviction for impeachment purposes when, under direct examination in the defense case, he or she attempts to "draw the sting out" of the conviction by "confessing" to that conviction before the State has the opportunity to confront him or her.

Judge Raker's opinion (announcing the judgment of the Court) began by relying on the long-settled general proposition in Maryland law that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Brown*, 373 Md. at 238, 817 A.2d at 243 (citations omitted). She then discussed *Ohler*, stating: "Although not binding on this Court, we agree with the majority's reasoning in *Ohler*." *Brown*, 373 Md. at 239, 817 A.2d at 244. The opinion bolstered its stance by citing dicta from *Johnson v. State*, 9 Md.App. 166, 177, 263 A.2d 232, 239 (1970), *overruled on others grounds by Bailey v. State*, 263 Md. 424, 283 A.2d 360 (1971), where the Court of Special Appeals "observe[d] that if the prior conviction was introduced by the defendant himself rather than by the State, he thereby waives objection." *Brown*, 373 Md. at 242, 817 A.2d at 245. Finally, Judge Raker explained that, because the defense made no objection during direct examination of the defendant, its position "runs counter to the requirement in Maryland for a contemporaneous objec-

tion to the admission of evidence." *Id.* The plurality held ultimately "that petitioner may not now complain that the evidence that he introduced himself in his direct testimony was not admissible. By introducing the evidence of his prior convictions in his direct testimony, he has waived the issue for appellate review." *Brown*, 373 Md. at 243, 817 A.2d at 246.

Judge Wilner's dissent in *Brown* rejected both Judge Raker's views and the Majority's holding in *Ohler.* Like the dissent in *Ohler,* Judge Wilner began by addressing the purpose behind the rules of evidence. *See Brown*, 373 Md. at 258, 817 A.2d at 255 (Wilner, J., dissenting) [8] ("Maryland Rule 5–102, which states the general purpose of the rules of evidence, makes clear that one of the functions of those rules is 'that the truth may be ascertained and proceedings justly determined.' " (footnote omitted)). Recognizing the particular challenges associated with admitting evidence impeaching a criminal defendant, Judge Wilner noted that "[l]ay people, and, I expect, even lawyers may have considerable difficulty in putting what they regard as logic and common experience aside and treat this powerful experiential evidence as affecting only one's credibility as a witness." *Brown*, 373 Md. at 260, 817 A.2d at 256. The fact that evidence introduced solely for the purpose of impeaching credibility may be misused easily by the fact-finder as substantive evidence, the *Brown* dissent argued, is an impairment to the jury's role at trial. Crediting Justice Souter, Judge Wilner wrote:

"Creating such an impression of current deceit by concealment is very much at odds with any purpose behind Rule 609, being obviously antithetical to dispassionate factfinding in support of a sound conclusion," that the chance to create that impression may be a tactical advantage for the Government but "disserves the search for truth" and that allowing the defendant to draw the sting promotes the fairness of trial without depriving the Government "of anything to which it is entitled."

---

8. *See supra* note 6.

*Brown,* 373 Md. at 265, 817 A.2d at 259 (quoting *Ohler,* 529 U.S. at 764, 120 S.Ct. at 1857, 146 L.Ed.2d at 835). The dissent, noting the "strong tide" of state courts' opposition to *Ohler,* concluded that "[t]he Federal courts, of course, are bound by *Ohler,* but we are not, and although we necessarily give any decision of the United States Supreme Court great respect, there is good reason not to give this one very much weight." *Brown,* 373 Md. at 265, 817 A.2d at 259.

Rather than abandoning the contemporaneous objection rule, however, Judge Wilner proposed a narrow exception. He stated:

> I would adhere generally to the contemporaneous objection rule, because it is a useful rule. I would bend it in this situation, however, because, when rigidly applied, it fails to serve the ends of either fairness or the search for truth. Bending it in this limited setting advances the cause of justice and creates no problem, either for the courts or for the State. The limited setting is where (1) the State makes clear that it intends to offer the conviction [9] if the defendant testifies, (2) the defendant makes a clear objection to the evidence, (3) the court makes a definitive ruling, intended to be final, that the evidence will be admitted, and (4) the defendant testifies and, to blunt the force of the conviction, reveals it on direct examination.

*Brown,* 373 Md. at 266, 817 A.2d at 260. We now adopt the reasoning of Justice Souter's dissent in *Ohler* and Judge Wilner's dissent in *Brown.* For purposes of *stare decisis,* we note this is a proposition that garnered the support of four Judges in *Brown* (the three dissenting Judges and myself). Further, we hold that, in the limited setting delineated by Judge Wilner, by "drawing the sting out" of a conviction by testifying about the conviction on direct examination during the defense case, knowing that the court will admit the prior

---

**9.** We note here that this "exception" is limited to the admission of a prior conviction for impeachment of a testifying defendant under Rule 5–609. We do not take up today the issue of whether the exception extends to the admissibility of prior bad acts under Rule 5–608(b).

conviction for the limited use of impeachment, a defendant does not waive his or her right to appellate review of the admissibility ruling on the use of that conviction for impeachment purposes.

Applying to the present case the four prongs discussed in the *Brown* dissent, we observe that the prosecutor stated explicitly that "[t]he State would like to bring that up" (referring to the arson conviction), satisfying the first prong. As to the second prong, defense counsel made a clear objection during argument on the motion *in limine,* stating "Yes, Your Honor, and certainly we would object" to the trial judge's ruling "I'd let [the prior arson conviction] in." Fulfilling the third prong, the court made an unequivocal and definitive ruling allowing the use of the prior arson conviction for impeachment, but not the prior attempted murder conviction, offering nothing that would lead a reasonable person to believe that the trial judge would reconsider his decision on the motion. Moreover, when defense counsel advised Cure, before he elected to testify, that his prior conviction would be admissible for impeachment purposes, the trial court made no attempt to revisit the issue. Finally, satisfying the fourth prong, Cure testified to the conviction under direct examination in the defense case-in-chief in an obvious attempt to blunt its force.[10] Thus, we conclude Cure did not waive the opportu-

---

10. The State contends that Cure's testimony went beyond mentioning merely the conviction and, thus, went into more depth than the State would have been permitted to do on cross-examination. Specifically, defense counsel asked: two questions about the nature and existence of the conviction; two questions about Cure's age at the time of the conviction; one question about the date of the conviction; one question about whether he served jail time; and five questions about the terms of his probation. The State avers that it would not have been permitted to inquire into the details surrounding the conviction in its case-in-chief and, consequently, Cure's voluntary testimony about details beyond the reach of the State constitutes waiver of a challenge to the admissibility of the conviction. This argument is not compelling. The State's interest in impeachment was satisfied by Cure admitting in front of the jury that he was a convicted felon. By testifying affirmatively to his prior arson conviction, Cure had the opportunity to frame the damaging admission in as positive a light as possible. A review of the transcript reveals that all ten of the questions posed to Cure by defense

nity to seek appellate review of the admissibility of his prior arson conviction for impeachment purposes.

II. *Impeachment with a Prior Conviction for Arson.*

■ When reviewing the admissibility ruling for impeachment purposes regarding a defendant's prior conviction, "we will give great deference to the [trial] court's opinion. Consistent with our prior cases, this court will not disturb that discretion unless it is clearly abused." *Jackson v. State,* 340 Md. 705, 719, 668 A.2d 8, 15 (1995) (citations and footnote omitted).

Maryland Rule 5–609, governing the impeachment of a witness by evidence of a prior conviction of a crime, provides, in pertinent part:

(a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) **Time Limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

(c) **Other Limitations.** Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:

(1) the conviction has been reversed or vacated;

(2) the conviction has been the subject of a pardon; or

(3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting

counsel were aimed at this underlying purpose of blunting the force of the conviction by divulging jail time served, the terms of his probation, and stressing his age at the time of conviction.

an appeal or filing an application for leave to appeal has not expired.

In *State v. Westpoint,* 404 Md. 455, 477–78, 947 A.2d 519, 532–33 (2008) (quoting *State v. Giddens,* 335 Md. 205, 213–14, 642 A.2d 870, 874 (1994)), we explained the analytical framework of appellate consideration of a ruling made under Rule 5–609:

First, subsection (a) sets forth the "eligible universe" for what convictions may be used to impeach a witness's credibility. This universe consists of two categories: (1) "infamous crimes" and (2) "other crimes relevant to the witness's credibility." Infamous crimes include treason, common law felonies, and other offenses classified generally as *crimen falsi.* If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends. This threshold question of whether or not a crime bears upon credibility is a matter of law. If a crime falls within one of the two categories in the eligible universe, then the second step is for the proponent to establish that the conviction was not more than 15 years old, that it was not reversed on appeal, and that it was not the subject of a pardon or a pending appeal. Finally, in order to admit a prior conviction for impeachment purposes, the trial court must determine that the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party. This third step is clearly a matter of trial court discretion.

■ The parties do not dispute that arson originated as a common-law felony. *See Robinson v. State,* 4 Md.App. 515, 523 n. 3, 243 A.2d 879, 884 n. 3 (1968) ("The common law felonies were murder, manslaughter, robbery, rape, burglary, larceny, arson, sodomy and mayhem."). Because arson was a common-law felony—a subsection of "infamous crimes"—it therefore falls within the "eligible universe" of crimes that are admissible potentially for impeachment, meeting the first requirement under Rule 5–609.

The second touchstone is that the date of the prior conviction must be less than "fifteen years old," and has not been

reversed, pardoned, or the subject of an open appeal. In the present case, Cure was convicted of arson in March of 2001, and the parties do not dispute that the March 2001 conviction was the final disposition of that case. Because the trial in the present case was held on 12–13 January 2009—a period of approximately 8 years after the prior conviction became final—this factor is satisfied.

The third requirement is a balancing test, where "the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party." Md. Rule 5–609(a)(2).[11,12] In order to balance the probative value of information that relates to a witness's credibility on one hand, with the danger of a prior conviction igniting unfair prejudice against the defendant on the other hand, we use typically five nonexhaustive factors, namely: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the [current] charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of

---

**11.** In Maryland, it is reversible error for the trial court not to apply the Rule 5–609 balancing test where the other prerequisites of the Rule are met. *See Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993) ("A trial court *must* first test all such evidence that a witness has been convicted of an infamous crime or other crime bearing on credibility, balancing its probativeness against its potential for unfair prejudice to the witness or to the objecting party." (emphasis added)). Compared to Federal Rule of Evidence 609, which does not apply the balancing test to "crimes of false statement," Md. Rule 5–609 "uses different categories of crimes and requires balancing as to all prior convictions." Lynn McLain, MARYLAND RULES OF EVIDENCE 124 (3rd ed.2007).

**12.** In *King v. State*, 407 Md. 682, 700, 967 A.2d 790, 801 (2009) (quoting *Jackson v. State*, 340 Md. 705, 716, 668 A.2d 8, 13 (1995)), this Court explained that:

By directing trial courts to weigh probative value against the danger of unfair prejudice, Rule 5–609 attempts 'to discriminate between the informative use of past convictions to test credibility, and the pretextual use of past convictions where the convictions are not probative of credibility but instead merely create a negative impression' of the witness.

the defendant's credibility." *Jackson,* 340 Md. at 717, 668 A.2d at 14.

Cure argues generally that the trial court abused its discretion by ruling that it would allow the use of Cure's prior arson conviction for impeachment purposes, explaining that "the impeachment value of an arson conviction is virtually nonexistent as it does not reflect adversely on a person's honesty." As the argument goes, because arson is not probative of credibility, the probative value of a prior arson conviction will be outweighed in most cases by the potential to kindle unfair prejudice in the fact-finder. The State, on the other hand, argues generally that "[b]oth the plain language and the historical background of Rule 5–609 contemplates that infamous crimes—no matter the specific type—are necessarily relevant to the witness's veracity."

### 1. *Impeachment Value.*

■ At common law, a convicted felon was barred completely from testifying. *See Giddens,* 335 Md. at 214, 642 A.2d at 874 ("At common law, one who had been convicted of treason, any felony, a misdemeanor involving dishonesty, or crimes relating to the obstruction of justice, was considered incompetent to testify at any trial." (citations omitted)). Under the common law, arson was defined as "the malicious burning of the dwelling of another." *Holbrook v. State,* 364 Md. 354, 367, 772 A.2d 1240, 1247 (2001); *see also Brown v. State,* 285 Md. 469, 473, 403 A.2d 788, 791 (1979); *Gibson v. State,* 54 Md. 447, 450 (1880). Under the common law, for a defendant to be convicted for arson, "the State had to establish four elements: (1) that the building burned was a dwelling house or outbuilding within the curtilage; (2) that the building burned was occupied by another; (3) that the building was actually burned, as mere scorching would not suffice; and, (4) that the accused's *mens rea* was willful and malicious." *Holbrook,* 364 Md. at 367, 772 A.2d at 1247 (footnote omitted).[13]

---

**13.** Prior to the 1929 codification of the crime of arson, *see infra* note 14, the Legislature expanded the common law definition to include the

By the time of Cure's conviction, first-degree arson had been codified for some time as a crime under Md.Code (1957, 1996 Repl.Vol.), Article 27, § 6.[14] That provision read:

(a) In general.—A person may not willfully and maliciously set fire to or burn a dwelling or occupied structure, whether the property of the person or another.

(b) Penalty.—A person who violates this section is guilty of the felony of arson in the first degree and on conviction is subject to a fine of not more than $50,000 or imprisonment for not more than 30 years or both.

Art. 27 § 6. The codified version of first-degree arson retains nonetheless the elements of the common law offense of arson. *See Richmond,* 326 Md. at 264, 604 A.2d at 486 ("Thus, Maryland has retained the common law definition of arson in Art. 27, § 6."). The current codification is a slightly more expansive definition of arson to include dwellings that were not occupied at the time of burning, and to account for setting fire to, but failing to completely burn, a structure.

 Arson, both at common law and now in the Md.Code, (2002), Criminal Law Article, § 6–102, continues to be recognized as a "crime against habitation." [15] *See Marlin v. State,*

---

burning of one's own dwelling. *See Richmond v. State,* 326 Md. 257, 263, 604 A.2d 483, 486 (1992) ("In 1904, the General Assembly slightly expanded upon the common law definition of arson by making illegal the burning of one's own dwelling house if the intent in burning it was to injure or defraud.").

14. This Court explained: "The first substantive attempt to codify the elements of the crime of arson occurred in 1929. Ch. 255, § 6 of the Acts of 1929." *Richmond,* 326 Md. at 263, 604 A.2d at 486. The statute was modified in 2002, after Cure's conviction, to include the definition of "occupied structure," previously defined elsewhere, and to revise the burning of one's own property "as a prohibited defense rather than as a qualification of affected property for clarity." Revisor's Note, Maryland Code (2002 Vol.), Criminal Law Article, § 6–102. First degree arson thus has remained largely unchanged substantively since 1929.

15. Cure seeks to re-characterize arson by analogy to battery, claiming that both are crimes of violence with a wide range of behavior that could yield convictions. *See State v. Duckett,* 306 Md. 503, 510–11, 510

192 Md.App. 134, 163, 993 A.2d 1141, 1158 (2010), *cert. denied,* 415 Md. 339, 1 A.3d 468 (2010) *("[A]rson is defined as a crime against habitation,* not persons or property." (emphasis added)). Although the definition of first degree-arson has been expanded slightly by statute, first degree arson remains a serious crime where an individual sets ablaze a building where either someone is present or someone is very likely to be present.[16]

Our understanding of first-degree arson notwithstanding, the Rules themselves establish that it retains at least some impeachment value. The Court of Special Appeals recognized, and we agree, that:

> [W]e glean from the history sketched above, and from the Court's adoption an interpretation of what is now Md. Rule 5–609, that although a prior arson conviction is no longer admissible *per se* on the grounds that it is an "infamous

---

A.2d 253, 257 (1986) (stating that "the types of offenses which fall within the ambit of the crime of battery vary widely" and holding that "[b]y the name of the crime battery, then, the conduct of the witness is unknown; thus nothing can be shown concerning the probable veracity of the witness"). This argument ignores the severity and historical underpinnings of common law arson. As this Court has explained:

> ARSON, *ab ardendo,* is the malicious and wilful burning of the house or outhouses of another man. This is an offence of very great malignity, and much more pernicious to the public than simple theft: because, first, it is an offence against that right, of habitation, which is acquired by the law of nature as well as by the laws of society; next, because of the terror and confusion that necessarily attends it; and, lastly, because in simple theft the thing stolen only changes it's [sic] master, but still remains *in esse* for the benefit of the public, whereas by burning the very substance is absolutely destroyed.

*Richmond,* 326 Md. at 264, 604 A.2d at 486–87 (quoting 4 W. BLACKSTONE, COMMENTARIES 220). First-degree arson is not simply a "crime of violence perpetrated against property" as Cure insists, but rather, "in keeping with its common law roots, first degree arson is a crime against habitation, not persons or property." *Holbrook v. State,* 364 Md. 354, 372, 772 A.2d 1240, 1250 (2001).

16. As noted, first-degree arson is the burning of either an occupied structure or a dwelling (either occupied or unoccupied). The statute contains this distinction in recognition of the fact that a structure adapted for overnight habitation, i.e., a dwelling, is more likely to have people present than a building which lacks overnight accommodation.

crime," the fact that it is an "infamous crime" in and of itself indicates that it is germane to a witness's credibility. Our conclusion is born out by the plain language of Md. Rule 5–609, which provides that a prior conviction may be admissible "if (1) *the crime was an infamous crime* or other crime relevant to the witness's credibility." Md. Rule 5–609(1)(1) (emphasis added). It is only crimes *other than infamous crimes* which require the trial court to preliminarily determine whether they are crimes relevant to truthfulness. *Cure v. State,* 195 Md.App. at 581–82, 7 A.3d at 159.[17] Because the Rules recognize that an infamous crime is "relevant to [a] witness's credibility," such a conviction must have some impeachment value. *See, e.g., Jackson,* 340 Md. at 729, 668 A.2d at 20 (Bell, J., dissenting) ("Where the prior conviction is for an infamous crime or one affecting credibility, the first factor invariably will favor admissibility."). The first prong of the balancing test in the present case weighs in favor of admissibility.

### 2. *The Period Between the Prior Conviction and Impeachment.*

 It is well-settled that the more recent a conviction, the more probative value it has for purposes of impeachment. *See, e.g., Bane v. State,* 73 Md.App. 135, 146, 533 A.2d 309, 314–15 (1987) ("As a general rule, the f[ur]ther in the past the crime, the weaker its relevance to present credibility."); *Jackson,* 340 Md. at 731, 668 A.2d at 21 (Bell, J., dissenting) ("The rule also recognizes, if only by negative implication, that the more recent the conviction the more probative its impeachment value."). The eight-year period between Cure's arson conviction and the ruling in 2009 as to its use as impeachment

---

**17.** We recognize, as the Court of Special Appeals did, that certain infamous crimes may have a greater bearing upon the credibility of the defendant than others. That is, a conviction for first-degree arson is not *admissible per se,* but it is *relevant per se* to a witness's credibility. Of course, this relevance must then be placed on the scale with the other factors in order for the trial judge to weigh the probative value against the prejudicial impact of admitting the conviction for impeachment purposes.

evidence at the trial, being roughly half way to Rule 5–609(b)'s fifteen-year outside limit, results in a neutral weight under the second prong. *See Fulp v. State*, 130 Md.App. 157, 168, 745 A.2d 438, 444 (2000) (holding that "[t]he second factor is relatively neutral" where "[t]he conviction for assault with intent to murder occurred eight years previously, *i.e.*, not exactly ancient history, yet not recent either").

### 3. *The Similarity Between the Prior Conviction and the Crime Charged Now.*

The third consideration—the similarity between the past crime and the charged crime—weighs in favor of admissibility in the present case. This Court has explained that "[t]his risk of prejudice is particularly great where the crime for which the defendant is on trial is identical or similar to the crime of which he has previously been convicted." *Jackson*, 340 Md. at 716, 668 A.2d at 13. As we stated in *Ricketts v. State*, 291 Md. 701, 703, 436 A.2d 906, 908 (1981):

> Where the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater, as the jury may conclude that because he did it before he most likely has done it again. The net effect of such evidence is often to discourage the defendant from taking the stand.

Cure admits, and we agree that "[a]rson and drug-related offenses are admittedly not similar crimes, and the prior arson conviction would obviously have been more prejudicial if Mr. Cure had been on trial for arson or for malicious burning." Because the prior arson conviction and the drug charge are dissimilar wholly, the prejudicial impact is reduced. The third consideration therefore weighs in favor of allowing the State to use the arson conviction for impeachment purposes.

### 4 & 5. *The Importance of the Defendant's Testimony and the Centrality of the Defendant's Credibility.*

The fourth and fifth considerations, weigh clearly here in favor of admissibility. In *Jackson*, 340 at 721, 668 A.2d at 16, we stated:

Factors four and five are restatements of the considerations that underlie the Rule: balancing the defendant's right to testify against the State's right to impeach the witness on cross-examination. Where credibility is the central issue, the probative value of the impeachment is great, and thus weighs heavily against the danger of *unfair* prejudice.

(Internal citations omitted.) Cure's defense of misidentification, as well as the conflicting reports about his attire, make his credibility central to the case. One of the critical considerations the jury had to contemplate was the question of whom to believe—Cure or the identifying detective. Cure's testimony, which amounted to the bulk of his defense, made "credibility ... the central issue" in the case, and, therefore, factors four and five weigh heavily in favor of admissibility.

At bottom, the question is whether the trial judge *abused his discretion* when he applied the balancing test to determine whether the probative value of the use of Cure's prior arson conviction for impeachment evidence outweighed the potential for prejudice in using the prior conviction. As this Court has stated:

[I]f the trial judge, in the exercise of his discretion, feels that the prior conviction rationally carries probative value on the issue of truth and veracity of the witness, ... the evidence [should] be admitted. Such exercise of discretion will be accorded every reasonable presumption of correctness and will not be upset except in a clear case of abuse.

*Prout v. State*, 311 Md. 348, 363–64, 535 A.2d 445, 452 (1988). We cannot say, as a matter of law, that the trial court abused its discretion in allowing use of Cure's prior arson conviction. The first prong was in favor of admissibility at least marginally, the second factor was neutral, and the third, fourth, and fifth weighed in favor of admissibility. Therefore, we afford the trial court due deference and hold that it was not an abuse of discretion to rule that Cure's prior conviction for arson was available to the State as impeachment evidence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**